## No. 11,131.

## LONDON GUARANTEE AND ACCIDENT CO. *v.* OFFICER, EXECUTOR.

Decided December 14, 1925.   Rehearing denied January 16, 1926.

Action on life insurance policy.   Judgment for plaintiff.

### *Affirmed.*

1. WITNESSES—*Adverse Party—Cross-Examination.* The president of a corporation which was the general underwriting agent for an insurance company and having charge of that branch of the company's business in four states, is "a managing agent," as that term is used in section 4570, C. L. '21, concerning cross-examination of adverse parties.

2. *Examination.* Although a party is bound by the adverse testimony of his own witness, and favorable evidence elicited by leading questions or distinctly cross-examining methods should be stricken on motion, all such, in the case under consideration was fully developed by the adverse party's examination of the same witness, hence should stand.

3. TRIAL—*Jury—Special Interrogatories.* The submission of special interrogatories to a jury rests in the sound discretion of the trial court.

4. *Jury—Special Interrogatories.* Where the issues are few and simple and fully covered by the court's instructions, a request for a submission to the jury of special interrogatories, is properly refused.

5. APPEAL AND ERROR—*Adjudicated Questions.* In an action on a life insurance policy, there having been a disposition of the defense of suicide while insane, on a former hearing, the appellate court declines to again consider it.

6. INSURANCE—*Suicide—Insanity.* The mental derangement which, in the case of one charged with crime, supports the defense of insanity, if found to exist in the insured in an accident policy covering death, will, when the insured has taken his own life while so deranged, make the suicide an accident under the statute and decisions.

7. INSTRUCTIONS—*Conflicting—Requests.* Requested instructions covered by the instructions given by the court, or which might be construed as in conflict therewith, are properly refused.

8. INSURANCE—*Notice—Instructions.* In an action on a life insurance policy, instructions of the court submitting to the jury the questions of excusable delay, and reasonable time, in giving notice required by the terms of the policy, approved.

9. PLEADING—*Law of the Case—Issues.* A former adjudication in the same case that issue was joined, is the law of the case on a re-trial below, and a stipulation to re-try "on the issues joined in the pleadings" in case of a reversal, is an admission that issue was joined.

10. INSURANCE—*Notice—Waiver.* In an action on a life insurance policy, conduct of the company and its agents held to constitute waiver of strict compliance with the contract as to notice of death.

11. *Notice—Stipulation of Non-Waiver.* In an action on a life insurance policy, stipulation of non-waiver held not to relate back to waiver of notice which had already taken place.

12. *Notice—Admissions—Waiver.* In an action on a life insurance policy, an admission of liability on the part of the company which could not exist if there had been no waivers of notice, is equivalent to an admission of such waiver.

13. *Suit on Policy—Defense—Technical Rules.* Where an insurance company after taking premiums from the assured year after year, on his death urges unjust, inequitable, and purely technical defenses to a suit on the policy, every lawful, though purely technical, weapon is allowable against such defenses.

14. *Notice—Public Policy.* Public policy will not permit the enforcement of impossible or unreasonable conditions as to notice of death under a life insurance policy.

*On Rehearing.*

15. APPEAL AND ERROR—*Rehearing.* A petition for rehearing which is merely a reargument of questions already presented, and which is discourteous in character, will be stricken from the files.

*Error to the District Court of Weld County, Hon. George H. Bradfield, Judge.*

Mr. WILLIAM E. HUTTON, Mr. BRUCE B. McCAY, for plaintiff in error.

Mr. HARRY N. HAYNES, Mr. RALPH L. DOUGHERTY, for defendant in error.

*En banc.*

MR. JUSTICE BURKE delivered the opinion of the court.

THIS action was brought by defendant in error against plaintiff in error. The parties are hereinafter referred to as plaintiff and defendant, as they appeared in the trial court, or as executor and the company.

Deceased carried a policy in the company, which policy provided that in case of loss of life "from bodily injuries effected within the period of this policy through accidental means, directly and independently of all other causes" the company would pay the principal sum; but if the injuries were inflicted by the insured, sane or insane, "the measure of the company's liability shall be a sum equal to the last premium paid, the same being agreed upon as in full liquidation of all claims under this policy." Defendant, while insane, committed suicide. The executor sued the company and the trial court gave judgment for the last premium only. The executor came here on error and the judgment was reversed. We there held that accident policies providing for payment in case of death are, in that event and to that extent, life insurance policies, and that section 2532, C. L. 1921, as construed in *Woodmen v. Sloss,* 49 Colo. 177, 112 Pac. 49, 31 L. R. A. (N. S.) 831, applied; hence, after the first policy year, suicide while insane is no defense. *Officer v. Accident Co.,* 74 Colo. 217, 220 Pac. 499. The cause was retried below and judgment entered for the executor on a verdict for $9,450. To review that judgment the company brings error.

Such of the thirty-seven assignments as are seriously argued and worthy of consideration may best be examined under a re-statement and re-division, i. e.: The trial court committed reversible error in the following particulars: (1) Permitting a witness to be cross-examined under the

statute; (2) refusing a request for special findings; (3) refusing to consider suicide while insane as a defense; (4) giving the jury a wrong definition of insanity; (5) refusing defendant's instructions 5 and 6 concerning burden of proof; (6) giving instruction 4 concerning notice of loss and proof of claim.

1. Our statute (section 6570, C. L. 1921) provides that the "superintendent or managing agents of any corporation, which is a party to the record" may be called by the adverse party and interrogated "as if under cross-examination," "but the party calling for such examination shall not be concluded thereby, but may rebut it by counter testimony." Plaintiff, stating that he acted under this statute, called and examined, over defendant's objection, one C. J. Daly, president of a corporation which was the underwriting agent of the company in the states of Colorado, Wyoming, Idaho and New Mexico.

The statute does not define the term "managing agent" and we need not specifically do so here. Most large corporations have numerous officers bearing various titles who properly come within the term. Certainly the president of a corporation which was the general underwriting agent for an insurance company, and as such had charge of that branch of the company's business in four states, would be a "managing agent" within the meaning of the statute. Otherwise the term must be limited to one general manager and we think it clear that the legislature never intended any such limitation.

However, if we now sustain the contention that this witness was not within the statute, he would become plaintiff's witness in the ordinary meaning of that term. We would then hold plaintiff bound by such of his testimony as was adverse and strike out such as was favorable, but elicited by leading questions or other distinctively cross-examining methods. But as all of it so elicited was fully brought out by defendant's examination of the same witness at the same time, or objection specifically waived (as in the admission of Exhibit 1), and as plaintiff adopts it

all, such a ruling could in no manner affect the judgment.

2. On the theory that the issues were many and complicated the company requested submission to the jury of seven special interrogatories. That request was properly denied. The issues were few and simple, and were fully covered by the court's instructions. The interrogatories submitted concerned either simple questions of fact necessarily involved in the verdict and covered by the instructions, or mixed questions of fact and law likely to confuse and mislead the jurors and invalidate any verdict they might return. The submission of special interrogatories rests in the sound discretion of the trial court. There was here no abuse of that discretion.

3. The company maintains that there was no proof of death by accident, that the verdict should have been limited to the last premium paid, and that defendant's instructoin 4, so limiting it, was erroneously refused. All this (if the court's definition of insanity was correct) amounts to nothing more than an attempt to re-present the defense of suicide while insane. That question was disposed of by our former opinion and the conclusion adhered to on rehearing. We have no doubt of the correctness of that judgment and decline to reexamine it here.

4. This court having decided that death from injury, self-inflicted while insane, was death by accident under the terms of this policy, the trial court, in its instructions, defined the word "insane" as meaning "that unsoundness of mind which would prevent the insured from understanding the physical nature and consequences of his act, or if foreseeing and meditating its physical consequences would prevent the insured from understanding its moral nature and aspect." The company objected to this instruction and asked in lieu of it an instruction that if deceased intended to kill himself and knew his act would probably produce death then he was not insane and the injury was not an accident. In other words it is here contended that the insanity which will make suicide an accident and bring it within the terms of the statute as a forbidden defense to a

suit on a life policy is something entirely different from the insanity which constitutes a defense in a homicide case. The objection to the court's instruction was over-ruled and defendant's requested instruction rejected. We think that ruling correct. In most murders committed by insane persons the perpetrator knows he is committing the act, knows that death will probably result, and expects and intends that it shall. Nevertheless he may not be held accountable if afflicted with a mental derangement which precludes any conception of the moral and legal aspects of the killing and permits him to undertake it with the same indifference he would undertake the killing of an insect. He is insane if so mentally diseased that he has no capacity to understand the nature of the act and no ability to distinguish between right and wrong as applied thereto; otherwise he is sane. Such is the insanity which, in most jurisdictions, including this, relieves from responsibility one who takes human life. 16 C. J. sec. 75, p. 100; *Ryan v. People*, 50 Colo. 99, 104, 114 Pac. 306, Ann. Cas. 1912B, 1232.

As it is the absence of responsibility which makes self-destruction an accident, this is the rule which should be applied here. Some courts apparently make the distinction contended for by defendant. We think it unsupported by sound reason and decline to adopt it. The trial court's definition was correct and sufficiently specific. Here there was ample evidence of such insanity.

5. The court instructed the jury that plaintiff had alleged in his complaint that the testator came to his death October 4, 1920, "through accidental means directly and independently of all other causes, to-wit: As a result of a shot from a pistol held in his own hand, while he was temporarily insane and wholly irresponsible as to his acts and conduct," and that "the burden of proof is upon the plaintiff to prove the material allegations of his complaint, by a preponderance of the evidence." Defendant's instructions 5 and 6, requested and refused, merely stated this proposition in a different and more confusing way. They were,

moreover, open to the objection that they might be construed as in conflict with the court's instruction defining insanity. They were properly refused.

6.   Paragraph 7 of the policy in question reads: "In the event of any accident hereby insured against happening to the assured, or to the beneficiary, written notice containing the full name and address of the person sustaining such accident, with full particulars of the accident, shall be given to the company's head office in Chicago, Illinois, as early as may be reasonably possible."

Paragraph 8 of the policy reads in part: "Affirmative proof of claim must also be furnished to the company's head office in Chicago, Illinois, within two months from time of death, * * *."

The policy was payable to decedent's estate.   The will was probated and the executor appointed December 6, 1920. He alleged in his complaint that "Plaintiff, as said executor, as early as was reasonably possible after receiving his said letters testamentary, to-wit, on the 11th day of December, A. D. 1920, gave notice to defendant, in form and manner satisfactory to it, of the name and address of his said testator with full particulars of the accident resulting in said death."

"Within five days after plaintiff obtained his said letters testamentary, he furnished defendant, in form and manner satisfactory to it, affirmative proof of claim based on said policy."

"Final proofs on form supplied and required by defendant regarding the death of said insured through accidental means directly and independently of all other causes with full and detailed particulars, were filed with the company's head office in Chicago, Illinois, on, to-wit, the 1st day of March, A. D. 1921, * * *."

Defendant demurred to the complaint for want of facts, pointing out therein, as reason therefor, that it appeared from the complaint that there had been no specific compliance with the requirements of said paragraphs 7 and 8 of the policy.   The demurrer was overruled and the com-

pany answered. Thereby it pleaded to that portion of the complaint above quoted as follows: "The defendant denies that the plaintiff as said executor, or at all, as early as was reasonably possible, gave notice to defendant in form and manner satisfactory to it, or as provided by said policy, or at all, of any particulars of any accident resulting in said death.

"The defendant denies that within five days after plaintiff obtained his letters testamentary he furnished defendant in form and manner satisfactory to it affirmative proof of claim, based on said policy.

"The defendant admits that certain proofs, regarding the death of said insured were furnished the defendant and filed with the company's head office in Chicago, Illinois, on or about March 1, 1921, but denies that said proofs established that the death of said insured occurred through accidental means directly and independently of all other causes."

It also alleged, in separate defenses, that paragraph 14 of the policy read: "Any misstatement in the Schedule of Warranties endorsed hereon or failure to comply with any of the requirements contained herein will invalidate all claims under the policy." And that plaintiff's failure to comply with said paragraphs 7 and 8 therefore invalidated the policy except as to the last premium paid, i. e., $25.00, and admitted its liability for that sum.

Plaintiff replied to the answer, alleging that oral notice of December 11, 1920, was given the company, through its agent Daly, as early as was reasonably possible because he first learned of the death October 9, 1920; that he had no knowledge of the policy until long thereafter; that he could not get the policy until December 6, 1920, when he received his letters, and hence had no knowledge of said paragraphs until two months after testator's death; that within a few days of said death the company had all the information called for by said paragraph 7; that on December 11, 1920, he presented the entire matter to defendant's "state agent" (said Daly) who said he would refer it to the company's general attorney on the question of liability

in case of suicide; that said agent made no claim or suggestion of a defense under said paragraph 7 and the company thereby waived such defense; that his failure to strictly comply with paragraph 8 of the policy was due to his inability to learn the provisions thereof and his want of capacity to make claim until his appointment; that because of the facts pleaded as to the events of December 11, 1920, defendant had waived this defense. The reply was filed May 1, 1922, and a general demurrer for want of facts as to each paragraph thereof was filed May 6, 1922. That demurrer was sustained by the court so far as the reply applied to the first and fourth defenses and the court then, on its own motion, entered judgment in favor of plaintiff for $25.00. It was stipulated in open court "that if plaintiff shall prosecute a writ of error from the Supreme Court of the State of Colo. to have reviewed the record herein, and if said Supreme Court shall find prejudicial error against plaintiff in said record, and thereupon reverse said judgment and remand the case for further proceedings, defendant, not having elected to stand on its demurrer to replication, and the several replies therein, should in no manner be prejudiced as against its right to have a trial on issues joined by the pleadings."

Such was the state of the record as to those matters under consideration in this paragraph of the opinion when the cause was before us as reported in 74 Colo. 217.

There is evidence in this record to support the foregoing allegations of fact and justify the following conclusions: The policy in question was dated June 3, 1909, and had been continued in force since that time by the payment of annual premiums to the Daly Company. It was customary for that company to receive proofs of claim in such cases and turn them over to the defendant's claim department, or legal department, in Denver, of which Mr. Hutton was in charge. Said claim department, or legal department, was authorized to investigate and handle such claims. Prior to December 11, 1920, Daly had knowledge of testator's death. On said day he believed that testator "had some sort of hal-

lucination which caused him to take his life" and so advised Hutton in writing, together with the name of the policy holder, the number of the policy, the name and address of plaintiff's attorney, and the likelihood of claim and dispute as to the effect of the suicide clause. December 23, 1920, Haynes, attorney for the executor, wrote Daly in the matter and that letter was turned over to Hutton who the next day wrote Haynes "without prejudice in case a claim is filed" but asserting that the suicide clause was a defense to the policy, and suggesting no other. December 13, 1920, a letter signed by the Daly Company and Hutton was sent by the latter to defendant at its Chicago office, giving the name of the insured, the date and number of the policy, the cause of death, stating that the insured "had been in ill health for some time," and that under advice of his attorney the executor was claiming that "the policy covered the case." January 6, 1921, Hutton wrote Haynes and the executor. January 7, 1921, Haynes wrote Hutton, and January 11, 1921, Hutton wrote Haynes, enclosing receipt of plaintiff's Exhibit 1, which reads: "It is hereby stipulated and agreed, by and between London Guarantee and Accident Company, Limited, London, England, and Robert A. Officer, as executor of the estate of Alexander V. Officer, deceased, that any action taken by said insurance company in investigating, and (or) attempting to adjust, and (or) adjusting and (or) defending any claim and (or) litigation growing out of the death of said Alexander V. Officer on or about October 4, 1920, shall not be construed as a waiver of said insurance company's right to deny liability, either in whole or in part, under its policy of accident insurance issued to said Alexander V. Officer in effect at the time of the death of said Alexander V. Officer, nor shall the execution of this stipulation and agreement be considered a waiver of the rights of the estate of said Alexander V. Officer, deceased, under said policy.

"Dated at Fort Morgan, Colorado, this 9th day of January, 1921.

"London Guarantee and Accident Co., Ltd.,
"By............................."

Robert A. Officer, executor of the estate of Alexander V. Officer, deceased."

February 24, 1921, Haynes sent the Daly Company proofs of death for which it receipted and which it transmitted to the Home Office of the company.

The court's instruction 4, given over the company's objection, reads: "You are instructed that the policy in this case requires that written notice containing the full name and address of the person sustaining the alleged accident, with full particulars of the accident, shall be given to the company's Head Office in Chicago, as early as may be reasonably possible; also that the policy requires that affirmative proof of claim must be furnished to the defendant's Head Office in Chicago within two months from the date of the death; and such policy provides further that the failure to comply with any of the requirements therein, will invalidate all claims under the policy.

"You are instructed as a matter of law, that if the evidence shows a sufficient explanation of the failure to give the required notice of the accident, as early as may be possible, or of the failure to furnish proofs of claim within the time provided in the policy, then such provisions are not applicable, and the plaintiff would have a reasonable time, under all of the circumstances, within which to give the notice and file the proof of claim.

"It is for the jury to determine from all the evidence, whether or not, under all the circumstances in this case, the notice of the accident and filing of the proofs of claim, were made within a reasonable time."

The company tendered in lieu of this its instructions 8 and 9 requiring strict compliance with the provisions of said paragraphs 7 and 8 of the policy. Said instructions were refused and defendant's objections to the court's instruction 4 were overruled. These rulings were correct for the following reasons:

(a) The overruling of the demurrer to the complaint, defendant's failure to stand thereon, our former decision which overruled the demurrer to the replication, and the

failure of defendant to assign cross errors, established as the law of the case that the facts set forth in the complaint and replication, if supported by the evidence, would require judgment for plaintiff, and there was evidence to support said facts.

(b) The foregoing was admitted by the company in its stipulation for trial, in case of reversal, "on the issues joined in the pleadings." If strict compliance with paragraphs 7 and 8 of the policy was essential to recovery, failure thereof was admitted by the pleadings. There were no issues joined, defendant should have had judgment on the pleadings, and our former decision should have been for the company irrespective of the question of suicide.

(c) When, on December 11, 1920, Daly agreed with plaintiff to take up the principal point in question with the legal department of the company (Hutton), as was the custom in such cases, and did so on the same date, and on December 13, 1920, Hutton sent his memorandum to the company (on which, without further notice, the company later furnished its forms for final proof, without objection for failure to comply with said paragraph 7 of the policy), all prior to the stipulation of non-waiver of date January 9, 1921, the company waived strict compliance with said paragraph. The stipulation of non-waiver did not refer to this matter, did not relate back, and the waiver had already taken place.

(d) The waiver claimed as to paragraph 7 of this policy is not saved by the stipulation, because the only stipulation was that any action taken by the company in investigating, adjusting, attempting to adjust, or defending, should not constitute a waiver of its right to deny liability. None of these things are here invoked to support waiver. Acceptance of oral rather than written notice, in Denver rather than Chicago, was no part of an investigation, adjustment or defense, and that acceptance preceded the stipulation.

(e) The waiver claimed as to paragraph 8 of the policy is not saved by the stipulation because the furnishing of blanks for affirmative proof of claim and the acceptance

of that proof after two months from the date of death, through the Daly agency at Denver instead of direct to the Home Office in Chicago, was no part of an investigation, adjustment or defense.

(f)˙ If strict compliance with paragraphs 7 and 8 of the policy were necessary to preserve it from invalidity under paragraph 14 thereof, then the company was not liable in any amount. Its admission of liability for $25.00 was therefore an admission that paragraphs 7 and 8 had been complied with, or such compliance waived, or an estoppel of its right to deny those facts, and relegated it to the defense of suicide.

(g) Paragraphs a, b, c, d, e and f, supra, present rules which may be said to be strictly technical. Assuming that such rules should not be invoked to defeat a just, meritorious and equitable defense, what are the facts? Our insurance code, of which said section 2532, C. L. 1921 is a part, was passed in 1913, but said section had been in effect since 1903. Chapter 119, p. 257, L. 1903; Section 55, chap. 193, p. 469, L. 1907; Section 3142, R. S. 1908; Section 59, chap. 99, p. 358, L. 1913.

This policy was written in 1909. If suicide is a defense now, it was, for the same reasons, a defense then. The amount provided for liquidation in case of suicide, i. e., the last premium paid, $25.00, is so utterly trivial as to be ample evidence of the fact that when the policy was written the company knew that suicide while insane was no defense and sought by this subterfuge to escape a plain provision of law on the theory that the so-called "liquidation" would furnish sufficient consideration to support the defense. With that plan formulated and with that intent in mind this company took premiums from the testator year after year and on his death defends against the claim of his executor on the ground that it has successfully circumvented the statute. Every lawful, though purely technical, weapon is allowable against such a defense.

(h) There is uncontradicted written evidence in this record that paragraph 7 and 8 of this policy were com-

plied with as far as was reasonably possible. Paragraph 7 does not specify who shall give the notice. It was given by the executor orally, as soon as was reasonably possible, to Daly, and Daly and Hutton promptly gave it in writing to the company at its home office in Chicago. Paragraph 8 does not specify who shall furnish "affirmative proofs of claim" nor what they shall consist of, nor that they shall be in writing. They were furnished by the executor to the company at its Home Office, by delivering them to Daly, who forwarded them. The sole failure then, if any, under these two paragraphs was failure to furnish such proofs within two months from the date of the accident. If that requirement may be strictly enforced when action within the time limited is not reasonably possible (which we think was the fact here) then if the insured meets with an accident in a lonely spot where the body is not discovered within two months, recovery is precluded. If such a contract may be upheld with a two month's limitation it may be upheld with a two day's limitation. If upheld as to this policy it must, on the same grounds, be upheld as to an ordinary life policy, and if so the law will support a defense to life insurance policies based upon a clause so unreasonable and unjust, and so clearly a subterfuge to justify the taking of premiums and the refusal of payment, as to amount to constructive fraud. A sound public policy will not tolerate such contracts in such a business.

That such contracts are subject to the public policy of the state, that the legislature may abolish suicide as a defense to such insurance policies as this, that it has done so by the passage of an act in substantial conformity to the act here in question, that if it does so such provisions as payment of a reduced amount in case of suicide are void, and that subterfuges to avoid the plain intent of the act will not be countenanced by the courts, have been laid down in many well reasoned decisions of courts of the highest standing and are so fundamental as to require no review and re-statement here. Notably these principles were announced in no doubtful language by Mr. Justice Harlan,

speaking for the Supreme Court of the United States in *Whitfield v. Aetna Life Ins. Co.*, 205 U. S. 489, 27 S. Ct. 578, 51 L. Ed. 595.

For the foregoing reasons the judgment is affirmed.

MR. JUSTICE CAMPBELL not participating.

MR. JUSTICE DENISON dissenting.

I am unable to agree with the opinion.

In effect it holds that correspondence between the company in Chicago and its agent and attorney in Denver, based on oral notice to them in Denver, is equivalent to the written notice in Chicago.

Is it not clear that such a proposition reduces the contract from "written notice in Chicago" to "oral notice in Denver"? If so, it in effect, destroys the power to make a contract requiring notice in any particular form.

## On Rehearing.

PER CURIAM.

Having obtained additional time in which to file this application, counsel for plaintiff in error urge ten reasons why the opinion is incorrect, but devote half of their application to the first, which is the question decided in *Officer v. Accident* Co., 74 Colo. 217, 220 Pac. 490, and which we have herein reaffirmed and decline to reexamine. In addition thereto that portion of the application contains nothing new, but is a mere reargument of the question as hertofore presented. It is, therefore, a gross violation of the rule of this court, and in addition is so discourteous as to merit at least the disposition now made of it. The application is stricken from the files. Rehearing is denied.