# No. 13,778.

## Capitol Life Insurance Company *v.* Di Iullo.
### (53 P. [2d] 1183)

Decided December 23, 1935.  Rehearing denied January 27, 1936.

Mr. William E. Hutton, Mr. Bruce B. McCay, for plaintiff in error.

Mr. Gilbert L. McDonough, Mr. Frank McDonough, Jr., Mr. Willis L. Strachan, Mr. John T. Haney, of counsel on petition for rehearing, for defendant in error.

*En Banc.*

Mr. Chief Justice Butler delivered the opinion of the court.

On November 21, 1925, the Capitol Life Insurance Company issued a policy on the life of Carlo Di Iullo for $5,000. Attached to the policy and made a part thereof was a double indemnity provision, whereby, so far as pertinent here, the company agreed to pay an additional $5,000 "in event that the death of the insured hereunder results directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occur within sixty days after sustaining such injury." It provided that the double indemnity benefit "will not apply if the insured's death resulted from self destruction, whether sane or insane." The double indemnity was granted in consideration of "the additional premium of $7.50 annually which is included in the premium stated on the face of this policy." The company paid to the beneficiary, Elvira Di Iullo, $5,000 under the straight life insurance policy, but refused to pay the additional $5,000 under the double indemnity provision, whereupon the beneficiary sued for that amount. She alleged in her complaint that the death of the insured was the result of an accident. That allegation the company denied. The plaintiff's evidence showed conclusively that on Septem-

ber 26, 1933, the insured committed suicide while sane. Thereupon, and for that reason, the court directed a verdict for the plaintiff, and upon that verdict rendered judgment for the plaintiff. To reverse that judgment the company sued out this writ of error.

The trial court held, and the defendant in error contends here, that notwithstanding the admitted fact that the insured was sane when he committed suicide, the company is liable by virtue of section 2532 of Compiled Laws of 1921. That section is as follows:

"From and after the passage of this act, the suicide of a policy-holder after the first policy year, of any life insurance company doing business in this state, shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policy holder was sane or insane."

Counsel for the plaintiff in error refer us to the elaborate briefs on this question filed in *Occidental Life Ins. Co. v. United States National Bank,* 98 Colo. 126, 53 P. (2d) 1180. We have considered the briefs filed in both cases.

We have not heretofore passed directly upon the question now presented to us.

■ In the case of a straight life insurance policy providing for the payment of money upon the death of the insured the condition upon which liability depends is the death of the insured, and, his death being shown, the loss comes within the coverage of the policy, and any provision attempting to relieve the insurer from liability in case the insured, after the first policy year, commits suicide, whether sane or insane at the time, is rendered void by the statutory provision quoted above.

■■ In this case the insurer recognized its liability on the straight life insurance policy and paid to the beneficiary the full amount of $5,000. Where, however, a policy provides for the payment of money upon the death of the insured as a result of accident, there are two conditions upon which liability depends; namely, (1)

death of the insured and (2) accidental cause of such death. Where an insured commits suicide while insane those two conditions are present, for suicide while insane is an accident. *Officer v. London Guarantee & Accident Co.,* 74 Colo. 217, 220 Pac. 499; *London Guarantee & Accident Co. v. Officer,* 78 Colo. 441, 242 Pac. 989; *Massachusetts Protective Ass'n v. Daugherty,* 87 Colo. 469, 288 Pac. 888. In such case the statute applies, and it is no defense that the insured committed suicide. See cases cited above. But under the double indemnity provision no liability arises unless death results from accident. Suicide by the insured while sane is not an accident. *Officer v. London Guarantee & Accident Co., supra,* at page 220 of official report; Note, 16 A. L. R. 1402; *Brunswick v. Standard Accident Ins. Co.,* 278 Mo. 154, 213 S. W. 45; *Von Crome v. Travelers Ins. Co.* (C. C.A.) 11 F. (2d) 350; *Business Men's Assurance Co. of America v. Scott* (C.C.A.) 17 F. (2d) 4. In such case the statutory provision quoted above does not apply. There is no liability on the part of the insurer, not because the insured committed suicide, but because there was no accident, and, as we have seen, the double indemnity clause provides for payment only in case of death by accident. It does not cover nonaccidental death. It may just as reasonably be held that on a straight life insurance policy, providing for the payment of money on the death of the insured, the insurer is liable where there has been no death, as to hold that on a policy providing that money shall be paid in case of death by accident, the insurer is liable where there has been no accident.

For the foregoing reasons, which seem to us to be unanswerable, we would content ourselves with reversing the judgment without further discussion, were it not for the fact that certain decisions, some of them relied upon by counsel for the defendant in error, seem to require some notice.

So far as we are advised, there are decisions in

only two other states having a statutory provision substantially the same as ours; namely, Missouri and Utah.

In *Whitfield v. Aetna Life Ins. Co.*, 205 U. S. 489, 27 Sup. Ct. 578, the court, following what it believed to be the construction given to the Missouri statute in *Logan v. Fidelity & Casualty Co.*, 146 Mo. 114, 47 S. W. 948, held that the statute allowed a recovery on an accident policy in case the insured committed suicide while sane. Thereafter the Supreme Court of Missouri, in *Brunswick v. Standard Accident Ins. Co., supra,* held that the statute has no application in an action on an accident policy, in case of suicide by a sane person, and that the Logan case did not hold to the contrary. There is an able discussion in the opinion, in the course of which the court said:

"While the above section makes absolutely void all stipulations exempting liability on account of suicide and all defenses bottomed on the fact of suicide, yet it nowhere relieves the plaintiff in *an action upon a policy of accident insurance* from making proof that the death of the assured was caused by an accident. In short, as forecast above, the section does not write into *an accident policy* a cause of action where none existed upon the facts. Granting for the sake of argument that the section * * * could have gone further and provided that 'suicide by a sane person shall be deemed to be an accident'; it is enough to say that it does not so provide. If the Legislature desired to create a cause of action upon a *policy of accident insurance* where none existed within the obvious meaning of the plain language of such contracts it would have been easy to say so. Therefore, unless the courts are able to say that a death by suicide of a sane person is a death by accident, further legislation would seem to be called for. There are no cases up to the present time so holding. Both the reason of the thing and the cases are the other way. * * *

"If under this rule it be impossible to distinguish the Whitfield case * * * then we may content ourselves with

saying that it is not binding on us in any respect, but at most only persuasive as the utterance of a great court, unfamiliar however, with many of the intricacies of our local statutes and rulings thereon."

To the same effect see: *Scales v. National Life & Accident Ins. Co.,* 212 S. W. 8; *Andrus v. Business Men's Accident Association of America,* 283 Mo. 442, 223 S. W. 70; *Aufrichtig v. Columbia National Life Ins. Co.,* 298 Mo. 1, 249 S. W. 912.

In the Scales case, supra, the court said among other things: "In Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S. W. 948, it was agreed by the parties that the insured came to his death from 'external, violent, and accidental means.' It was also conceded that he committed suicide. In other words, it was conceded that it was a death by accident. The court there correctly held that an accidental death by suicide was covered by the accident policy, and that the statute applied and took away the defense of suicide. It did not hold or intimate that a suicide by a sane person was an accident or was covered by an accident policy. It did not touch the question now under consideration, because such a question could not arise under the agreed facts of that case."

And referring to the Whitfield case, supra, and other cases, the court said: "* * * the vital point now under consideration was not discussed or decided. The plain truth is that courts and counsel in all those cases proceeded on the theory that, under the Logan Case, suicide by a sane person was an accident covered by an accident policy, an assumption absolutely without any foundation, as we have seen."

In *Von Crome v. Travelers Ins. Co., supra,* the Circuit Court of Appeals for the Eighth Circuit held, notwithstanding the decision in the Whitfield case, supra, that the Missouri statute does not apply in an action on an accident policy where the insured commits suicide while sane. Discussing the Missouri cases and the Whitfield case, the court said:

"The earlier case of Logan v. Insurance Co., supra, was distinguished in the Brunswick Case, and was obviously capable of being distinguished, because the admitted facts conceded that the death there dealt with was in fact an accident. So, down to the day the case of Brunswick v. Insurance Co., supra, was decided, the Supreme Court of Missouri had never construed section 6150, supra, as applying to a case of suicide by a sane person, in an action upon a policy of insurance insuring against death by accident. * * *

"It follows, that there is nothing in the Missouri ruled cases * * * which holds that section 6150, supra, applies to suicide by a sane person when insured against death by accident, and when a suit is brought upon such a policy. It is true that much sweeping language is to be found in the Logan Case, but, as said already, when the facts up for judgment in that case are examined, it will be seen that the fact there conceded, namely, that death, though caused by self-destruction, was accidental, clearly distinguishes it from the Brunswick Case."

And referring to the holding in the Whitfield case, the court said:

"In so doing, it followed what it conceived to be the construction put upon the statute by the Supreme Court of Missouri in the Logan Case; although, as the Brunswick Case labored to show, the Logan Case laid down no such all-embracing rule, so far as concerned the facts up for judgment in that case. * * *

"* * * in ruling in a thorough-going way in favor of the application of section 6150, supra, to all policies insuring against death by accident, as it seemingly did in the Whitfield Case, the Supreme Court of the United States was misled by the broad language of the Logan Case, and so felt constrained to follow what it believed to be the ruling of the Supreme Court of Missouri in the matter of the construction of a local statute."

So much for the cases construing the Missouri statute. We now come to the cases construing the Utah statute.

In *Continental Casualty Co. v. Agee,* 3 F. (2d) 978, the Circuit Court of Appeals for the Eighth Circuit followed the Whitfield case, the Supreme Court of Utah at that time not having construed the statute. We quote from the opinion: "The right of the state court to construe a local statute must be conceded, but if the Missouri statute and the Utah statute are the same in effect, it is the duty of this court in interpreting the Utah statute to follow any construction placed on the statutory language by the Supreme Court of the United States unless the Supreme Court of Utah has placed a construction thereon. No such decision by the Utah court appears to have been made."

Thereafter the Utah Supreme Court, in *Carter v. Standard Accident Ins. Co.,* 65 Utah 465, 238 Pac. 259, followed the Agee case and the Whitfield case.

*Aetna Life Ins. Co. v. Wertheimer,* 64 F. (2d) 438, involved the same question. The court, while recognizing the force of the argument contra, followed the Whitfield case, saying:

"The difficulty with this formidable argument is that it comes too late, and is made to the wrong court. The Utah statute means what the Supreme Court of Utah says it means, and that court has held against appellant on both contentions. * * *

"That other courts are bound by the construction placed upon a state statute by the highest judicial tribunal of the state, is a general rule of long standing and undoubted authority."

It is clear that the decisions construing the Utah statute were bottomed on the Whitfield case, and we have seen that the Whitfield decision, as explained by the Supreme Court of Missouri and the Circuit Court of Appeals for the Eighth Circuit in a Missouri case, was the result of a misunderstanding of the Logan decision.

The Colorado statute was before the Circuit Court of Appeals for the Tenth Circuit in *Aetna Life Ins. Co. v. Braukman,* 70 F. (2d) 647, decided in 1934. As this

court had not decided directly the exact point, the court elected to follow the construction placed by the Supreme Court of Utah upon the statute of that state. We have seen that the basis of the Utah decision was the Whitfield case, and the Whitfield decision, as we have noted above, was the result of a misunderstanding of a decision rendered by the Supreme Court of Missouri.

The duty of construing the statute of this state rests upon us. It was only because we had not yet directly decided the point that the Federal Court for this circuit placed its own construction upon our statute. It now devolves upon us to give to the Colorado statute such construction as seems to us to be reasonable. While, as already stated, we have not passed directly upon the point now presented to us, our decision in *London Guarantee & Accident Co. v. Officer, supra,* is a strong intimation of our view on the subject. That case was an action on an accident policy. When the case first came to this court (*Officer v. London Guarantee & Accident Co., supra*), we held that the suicide of an insured while insane is an accident under the terms of the policy. The judgment was reversed for further proceedings. At the second trial the court gave an instruction defining insanity. Judgment went against the company, and the case was brought here a second time. Objection was made that the instruction on insanity did not correctly state the law. We carefully considered the instruction, and also an instruction on the same subject tendered by the company and refused by the court, and held that the instruction given was not open to the objection urged and that the requested instruction was properly refused. We stated that ''it is the absence of responsibility which makes self-destruction an accident.'' The clear inference to be drawn from our decision in that case is that in our opinion the plaintiff could not recover unless there was an accidental death, and that the question whether or not the death involved in that case was accidental depended upon whether or not at the time the insured com-

mitted suicide he was insane or sane. If we believed that the statute precludes a recovery regardless of whether the insured was insane or sane when he committed suicide, the question of the correctness of the instruction on insanity would have been unimportant, and our careful consideration of the instruction would have been a waste of time and effort.

The attorneys for the defendant in error quote the following from the opinion in *Massachusetts Protective Ass'n v. Daugherty, supra*: ''We have held * * * that any provision in a policy attempting to relieve an insurer from liability in case of suicide is a nullity.'' That language was used in a case where the insured committed suicide while *insane,* and the cases referred to were of like character. General expressions in an opinion must be read in the light of the questions presented and the facts in the particular case. *American Mortgage Co. v. Logan,* 90 Colo. 157, 7 P. (2d) 953. So read, the language quoted above has no application in the present case.

With all due respect to the learned courts that have taken the contrary position, we adhere to the views expressed at the beginning of this opinion, and hold that the statute does not apply where a policy provides for the payment of money upon the accidental death of the insured and the insured commits suicide while sane.

The judgment is reversed, and the cause is remanded to the district court with instructions to dismiss the case.

MR. JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE YOUNG dissent.