## MONAHAN v. MUTUAL LIFE INS. CO. OF NEW YORK.

## SAME v. NEW YORK LIFE INS. CO.
## MONAHAN et al. v. SAME.
## Nos. 1914–1916.

Circuit Court of Appeals, Tenth Circuit.
Dec. 30, 1939.

Fred E. Suits and Grady Lewis, both. of Oklahoma City, Okl., for appellants.

V. P. Crowe, of Oklahoma City, Okl. (Louis W. Dawson, of New York City, John Embry, Charles Edward Johnson, and Raymond A. Tolbert, all of Oklahoma City, Okl., on the brief), for appellee Mutual Life Ins. Co. of New York.

W. F. Wilson, of Oklahoma City, Okl. (W. F. Wilson, Jr., of Oklahoma City, Okl., and Louis H. Cooke, of New York City, on the brief), for appellee New York Life Ins. Co.

Before PHILLIPS, WILLIAMS, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Ed Monahan, Jr., was a resident of Little Rock, Arkansas. The Mutual Life Insurance Company of New York issued three policies of insurance to him, designated in the abstract as Exhibits 1, 2 and 3. The New York Life Insurance Company of New York issued four policies of life insurance to him, designated in the abstract as Exhibits 4, 5, 6 and 7. The applications for these policies were taken in Little Rock, Arkansas, and the policies were delivered to insured there. The policies provided that the benefits were payable at the home office in New York City, New York, and that the premiums were payable either at the home office or to any authorized agent. The premiums on all the policies were actually paid in Little Rock, Arkansas.

All these policies contained a provision for the payment of double indemnity benefits in the event of accidental death. They also contained an incontestable clause. Policy, Exhibit 1, provides that double indemnity shall not be payable in the event of the insured's death as the result of military or naval service in time of war, nor shall it be payable in the event of insured's death at any time by his own act, whether sane or insane. Policy, Exhibit 2, provides that double indemnity shall not be payable if death resulted from self-destruction, whether sane or insane. Policy, Exhibit 3, provides for the payment of double indemnity upon receipt of proof that death resulted from bodily injury effected solely through external, violent and accidental means. Policies, Exhibits 4, 5, 6 and 7 all provide that double indemnity benefits will not be paid if the insured's death resulted from self-destruction, whether sane or insane.

Policy, Exhibit 1, provides that it shall be incontestable after two years from the

date of its issue except for non-payment of premiums. Policies, Exhibits 2 and 3, provide that they shall be incontestable after one year from the date of issuance except for non-payment of premiums and except for the restrictions and provisions applying to the double indemnity and disability benefits. Policy, Exhibit 4, provides that it is free of conditions as to residence, travel, occupation or military or naval service, except as provided for under double indemnity and shall be incontestable after two years from its date of issue, except for non-payment of premiums. Policies, Exhibits 5, 6 and 7 provide that they shall be incontestable after two years from date of issuance except for non-payment of premiums and except as to provisions and conditions relating to disability and double indemnity benefits.

The proof of beneficiaries established that the insured died from a gunshot wound on August 20, 1932. The proof of the insurance companies established that the insured committed suicide.

The companies admitted liability for the face amounts of the policies, but denied liability for the double indemnity payments under the provisions of the policies on the theory that death was not accidental but was the result of suicide. The beneficiaries contend that the incontestable clause of the policies barred the companies from advancing the defense of suicide. The companies paid the face amounts of the policies without prejudice to the rights of either of the parties as to the double indemnity provisions of the policies.

Litigation ensued. The trial court held that the insurance contracts were to be performed in the state of New York, and were to be interpreted under the laws of that state; that the incontestable clause did not bar proof that insured's death resulted from suicide and was not accidental. Judgment was entered for the companies, from which an appeal has been taken to this court. The parties will be designated as they appeared in the court below.

Two assignments of error are presented for our consideration. Plaintiffs contend, first, that the contracts of insurance were Arkansas contracts and must be construed under the decisions of the courts of Arkansas, and, second, that under the decisions of the courts of Arkansas the defense of suicide is not available to the companies against a claim for double indemnity where the policies have become incontestable.

It is not necessary to determine whether the contracts of insurance are Arkansas contracts or New York contracts, because in either event the conclusion reached must be the same. Plaintiffs assert that under the Arkansas rule, the incontestable clause bars and precludes the defendants from asserting the defense that death was not accidental but was the result of suicide. The following cases are cited in support thereof: Missouri State Life Ins. Co. v. Cranford, 161 Ark. 602, 257 S.W. 66, 31 A.L.R. 93; Standard Life Ins. Co. v. Robbs, 177 Ark. 275, 6 S.W.2d 520, 524; Fore v. New York Life Ins. Co., 180 Ark. 536, 22 S.W. 2d 401, 67 A.L.R. 1358. An examination of these cases reveals that in none of them was the recovery of double indemnity benefits for accidental death involved. The Cranford case involved two insurance policies, each containing an incontestable clause. The insured died before the expiration of the period when the policies became incontestable, although the answer by the company was not filed until after the expiration of that period. The defense was fraudulent representations made in the application. The court held that this defense constituted a contest of the policies and was not permissible after the expiration of the contestable period. The Robbs case was a suit to recover $5,000 payable in monthly installments. Double indemnity payments were not in issue. The insured died prior to the expiration of the contestable period. The company after the expiration of this period pleaded that the insured's death resulted from suicide. The court held that this defense could not be asserted. The policy in the case of Fore v. New York Life Insurance Co. was issued for $5,000, with double indemnity benefits for accidental death. Suit was brought to recover $2,999. Death was by suicide before the expiration of the incontestable period. Here also the company filed its answer after the expiration of the incontestable period. The court held that this defense could not be asserted. The suit was to recover less than the face amount of the policy. No attempt was made to recover under the double indemnity provision of the policy.

Liability for double indemnity is predicated upon accidental death. If there is no accidental death, there is no liability for

double indemnity and the beneficiary can recover only the face amount of the policy. Can it be said that after a policy has become incontestable, a claim can be asserted for the double indemnity part of the policy without the happening of the contingency—namely, accidental death—upon which payment of double indemnity is predicated, or if such claim is asserted, are the companies denied the right to show that there was no liability because accidental death had not ensued? Let us assume that the insured in this case had died from pneumonia and a claim for double indemnity had been made, would the incontestable clause preclude the companies from showing that death had occurred from pneumonia and therefore was not accidental? Obviously not.

The incontestable clause of a policy precludes any defense arising out of the making or executing of the contract of insurance. It prevents the company from challenging the validity of the policy. Childress v. Fraternal Union of America, 113 Tenn. 252, 82 S.W. 832, 3 Ann.Cas. 236; Stean v. Occidental Life Ins. Co., 24 N.M. 346, 171 P. 786. It cannot prevent the company from showing that the happening of the event upon which liability becomes fixed has not occurred. Illinois Bankers' Life Ins. Co. v. Byassee, 169 Ark. 230, 275 S.W. 519, 41 A.L.R. 379; Ferrand v. New York Life Ins. Co., 8 Cir., 69 F.2d 159; Maslin v. Columbian National Life Ins. Co., D.C., 3 F.Supp. 368.

Here the companies do not contest the validity of the policy or deny that it is in force. They concede that it is a lawful policy and that all the provisions of the policy are in full force and effect. They do deny that the double indemnity feature of the policy has become absolute by the happening of the event upon which double indemnity is predicated.

To say that the incontestable clause of an insurance policy prevents the company from showing that the condition upon which double indemnity depends has not occurred would be to broaden the scope of the policy and make a contract that was not contemplated by the parties when it was executed. To permit this would be to increase the coverage or enlarge the scope of the policy. Life & Casualty Ins. Co. of Tennesssee v. De Arman, 192 Ark. 11, 90 S.W.2d 206; Head v. New York Life Ins. Co., 10 Cir., 43 F.2d 517; Sanders v. Jefferson Standard Life Ins. Co., 5 Cir., 10 F.2d 143; Mack v. Connecticut Gen. Life

Ins. Co., 8 Cir., 12 F.2d 416; Hawkeye Commercial Men's Ass'n v. Christy, 8 Cir., 294 F. 208, 40 A.L.R. 46.

Death by intentional self-destruction is not accidental death, Capitol Life Ins. Co. v. Di Iullo, 98 Colo. 116, 53 P.2d 1183; Von Crome v. Travelers' Ins. Co. of Hartford, Conn., 8 Cir., 11 F.2d 350; Brunswick v. Standard Acc. Ins. Co., 278 Mo. 154, 213 S.W. 45, 7 A.L.R. 1213; Couch Cycl. of Ins. Law, § 1144; and therefore not within the coverage of a double indemnity provision of a policy, insuring against accidental death.

No decision of the Supreme Court of Arkansas has been cited or has come to our attention which would compel a contrary holding.

The judgments of the trial court are affirmed.