## McREYNOLDS v. NEW YORK LIFE INS. CO.

### No. 12000.

Circuit Court of Appeals, Eighth Circuit.

Oct. 17, 1941.

Orrillis E. Shultz, of St. Joseph, Mo. (Stephen K. Owen, of St. Joseph, Mo., on the brief), for appellant.

Richard S. Righter, of Kansas City, Mo. (Horace F. Blackwell, Jr., of Kansas City, Mo., F. H. Pease, of New York City, and Lathrop, Crane, Reynolds, Sawyer & Mersereau, of Kansas City, Mo., on the brief), for appellee.

Before SANBORN and JOHNSEN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

The question presented by this appeal is whether, under the law of Missouri, a contract of accident insurance issued in that State to a citizen of that State, which expressly excluded from coverage death caused by the inhaling of gas, nevertheless covered such a death if the gas was voluntarily inhaled by the insured while insane.

The appellant is the beneficiary named in two identical life insurance policies issued to Glenwood E. McReynolds, each of which contained a clause providing for double indemnity in case of accidental death as defined in the clause. She brought this action, alleging in her complaint that the insured "did receive bodily injury through accidental means, to-wit, through inhaling carbon monoxide gas self-administered while insane which said gas then and there resulted directly, independently and exclusively of all other causes in the death" of the insured. She set up in her complaint the pertinent provisions of the policies in suit, and asserted that she was entitled to double indemnity. The insurer moved for a dismissal of the complaint upon the ground that it failed to state a claim upon which relief could be granted. Rule 12(b)(6), Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c. The District Court granted the insurer's motion, and from the judgment of dismissal this appeal was taken.

The double indemnity clause of each policy provided: "The accidental death benefit specified shall be payable upon receipt of due proof that the death of the insured resulted * * * from bodily injury effected solely from external, violent and accidental means * * * provided however that such accidental death benefit shall not be payable if the insured's death resulted from the taking of poison or inhaling of gas, whether voluntary or otherwise."

It is conceded that the clause also excluded from coverage death resulting from "self-destruction whether sane or insane."

For many years there has been in force in Missouri a statute commonly known as the Missouri Suicide Statute, which is now Sec. 5851, R.S.Missouri, 1939. It reads as follows: "Sec. 5851. *Suicide no defense, when.*—In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, to a citizen of this state, it shall be no defense that the insured committed suicide, unless it shall be shown to the satisfaction of the court or jury trying the cause, that the insured contemplated suicide at the time he made his application for the policy, and any stipulation in the policy to the contrary shall be void."

This case turns upon the effect which this statute has upon the double indemnity clause of the policies in suit. Obviously, in the absence of the statute there could be no recovery for two reasons: (1) because the double indemnity clause excluded from coverage suicide whether the insured was sane or insane; and (2) because the clause

excluded death from inhaling gas. The appellant contends that the Suicide Statute invalidates both exclusions, provided it can be shown that the insured came to his death from inhaling gas while insane. The insurer contends that the effect of the Suicide Statute is merely to invalidate the exclusion of suicide while insane and to prevent the assertion of any defense based on such suicide, and that the statute does not limit, and was never intended to limit, the right of the insured and insurer to agree that death from inhaling gas, whether accidentally or voluntarily, should be excluded from coverage. The District Court decided that the Suicide Statute of Missouri did not apply to a case "in which the species of accident from which the insured died or by which he was injured was entirely excluded from the coverage of the policy."

While the statute has been held applicable to insurance against accidental death (Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S.W. 948), the exact question here presented has not been decided by the Supreme Court of Missouri. Two intermediate appellate courts of that State have considered substantially the same question and have reached diametrically opposite conclusions. The question was considered in 1910 by the St. Louis Court of Appeals in Applegate v. Travelers' Ins. Co., 153 Mo. App. 63, 132 S.W. 2. The policy in that case covered accidental death, but provided that if death was caused by gas, vapor, or poison, the insurer would pay only one-tenth of the face amount of the policy. It was alleged in the petition that the insured had committed suicide by drinking carbolic acid. One defense of the insurer was that the death being due to poison, its liability was only one-tenth of the face amount of the policy. It was held that because of the Suicide Statute, this defense was not available to the insurer.[1] The same question was considered by the Springfield Court of Appeals in 1916 in the case of Scales v. National Life & Accident Ins. Co., 186 S.W. 948. In the Scales case the policy covered accidental death, but provided that the insurer should only be liable for one-fifth of the face amount of the policy if death resulted from poison. The insured killed himself by taking carbolic acid. It was held that the beneficiary could recover only in accordance with the terms of the policy, and that the provision for a reduced amount in case of death from poison was

---

[1] The St. Louis Court of Appeals said (page 11 of 132 S.W.):

"In the argument of this case at bar, as well as by printed brief, the learned counsel for the appellant suggest that the statute was not applicable because defendant had not and was not setting up suicide as a defense. Literally, this is true; the answer carefully and skillfully avoids that. But this argument is effectually disposed of in the opinion of the Supreme Court of the United States in the Whitfield Case, supra [Whitfield v. Ætna Life Ins. Co., 205 U.S. 489, 27 S.Ct. 578, 51 L.Ed. 895], where, to repeat, Justice Harlan says, at page 496 of 205 U.S., at page 580 of 27 S.Ct., 51 L.Ed. 895: 'Whatever tends to diminish the plaintiff's cause of action or to defeat recovery in whole or in part amounts in law to a defense.' It is immaterial that the defense was anticipated by the petition, and that the answer does not in terms rely on suicide as a defense. The present action is to recover the whole amount specified in the policy. Appellant here, defendant below, is defending against that. While it is true that it does not in terms and by its answer set up suicide as a defense to the policy, it is beyond question that it is defending against a recovery for the whole amount of the policy, on the ground that the in- sured died from taking poison. Whether he took that poison accidentally or of purpose is not material here. If the fact that he died from the effect of poison, which it is admitted he took with suicidal intent, is not urged by the appellant as a defense against the action, then it follows that it is before the court without having interposed any defense whatever in this case. It seems a rather narrow argument to say that while the answer avers the insured died by poison, and stops there, therefore the defendant has, by its pleading, cut out and eliminated the statute, although in fact it appears by the agreed facts that the insured took the poison with suicidal intent. This is hardly even specious; it certainly is not sound. The argument is also advanced that suicide does not give a cause of action. That is true. The cause of action arises on the policy as interpreted by the statute and by reason of the death of the insured. The policy, as interpreted by the law and by the courts, does provide that, when death occurs from suicide, whether that suicide is accomplished by poison or by shooting, the beneficiary shall recover for the full amount insured to be paid by reason of death occurring. The statute eliminates suicide as a defense."

valid and was not affected by the Suicide Statute.[2]

The Scales case went to the Supreme Court of Missouri, 212 S.W. 8, which approved the conclusion reached by the Springfield Court of Appeals, but upon the grounds that it did not appear from the evidence whether the insured was sane or insane when he killed himself, that the presumption was that he was sane, and that suicide committed while the insured was sane was not an accidental death and was not made such by the Suicide Statute or by any previous decision of that court construing the Suicide Statute. Of the statute, the court, among other things, said (pages 9, 10 of 212 S.W.): "That statute does not put into the policy a single obligation other than those mentioned in the policy. It merely takes out of the policy the defense of suicide as to the obligations mentioned in that policy." In conclusion, the court said: "As the plaintiff, under the facts as shown, cannot recover more than $140 [the face amount of the policy was $700], it becomes unnecessary for us to pass on the question so thoroughly and ably discussed by the Court of Appeals."

In the later case of Brunswick v. Standard Acc. Ins. Co., 278 Mo. 154, 213 S.W. 45, 7 A.L.R. 1213, which did not involve the question here presented, but which did involve the question of the effect of the Suicide Statute upon a policy insuring against death by accident, the Supreme Court of Missouri said of the statute (page 49 of 213 S.W.): "While the above section makes absolutely void all stipulations exempting liability on account of suicide and all defenses bottomed on the fact of suicide, yet it nowhere relieves the plaintiff, in an action upon a policy of accident insurance, from making proof that the death of the assured was caused by an accident. In short, as forecast above, the section does not write into an accident policy a cause of action where none existed upon the facts. Granting, for the sake of argument, that the section (the applicability of which to accident policies, though now fairly well settled, has been strenuously and ably combated and denied) could have gone further, and provided that 'suicide by a sane person shall be deemed to be an accident,' it is enough to say that it does not so provide. If the Legislature desired to create a cause of action upon a policy of accident insurance where none existed within the obvious meaning of the plain language of such contracts, it would have been easy to say so. Therefore, unless the courts are able to say that a death by suicide of a sane person is a death by accident, further legislation would seem to be called for. There are no cases up to the present time so holding. Both the reason of the thing and the cases are the other way."

[2] The Springfield Court of Appeals said (pages 951 and 952 of 186 S.W.):

"It would seem against all public policy to allow an insurance company to insure the lives of only such persons as commit suicide, and this is intimated in the case of Ritter v. Mutual L. Ins. Co., 169 U.S. 139, 18 S.Ct. 300, 42 L.Ed. 693. Where the policy provides that if the injury when fatal results directly or indirectly from poison the amount of indemnity shall be $140, to hold that the company will be bound to pay $140 if the poison is taken accidentally, and that it must pay $700 if the poison is taken with suicidal intent, is in effect holding that a policy putting a premium on suicide, and giving suicide as a preferred cause of action is a legal and valid agreement. We are of the opinion that our suicide statute was intended to merely cut off one weapon of defense formerly in the hands of insurers, and was never intended to create a cause of action upon affirmatively showing suicide as a cause of the death.

"It seems to us there is a vast difference between holding that suicide, under our statute, cannot be made by contract a partial defense or be used to reduce the recovery and holding that it is competent for an insurance company to provide an indemnity of $140 where death results from poison howsoever taken. To illustrate: Suppose a policy provided an indemnity of $5,000 in the event of death resulting from a gunshot wound and $500 in case death results from poison and contained a clause against suicide, and the policy only provided for these two classes. Now, although suicide by shooting could not be shown to defeat or decrease the first amount, could it be contended that because suicide was committed by taking poison the beneficiary could recover $5,000 by reason of the statute? This would be a very different case from one in which the policy contained a provision to pay $5,000 if death resulted from a gunshot wound, but only $500 if the wound was inflicted for the purpose of committing suicide. The mere fact of suicide would not, in and of itself, create a greater liability than if death resulted unintentionally from the same circumstances and from the same cause."

While statements in opinions of Missouri courts dealing with cases in which the exact question for decision here was not ruled upon or was not involved, may not be the safest guides to follow, we think that what the Supreme Court of Missouri has said in the Scales and Brunswick cases as to the effect of the Suicide Statute upon accident policies, justifies, if it does not require, the conclusion that, while the Suicide Statute invalidates all agreements in such policies which seek to exempt an insurer from liability for suicide of the insured while insane, the statute does not relieve his beneficiary from proving that the death of the insured was otherwise within the coverage of the policy. That being so, an accident policy which insured only against death from taking poison would afford coverage if the insured while insane caused his own death in that way, regardless of any provision of the policy excluding suicidal death; but the policy would not cover suicide of the insured while insane if caused by gunshot, knife wounds, drowning, inhaling gas, jumping from a bridge or a building or by any means except poison. Under that construction of the statute, the beneficiary of an insured under an accident policy who committed suicide while insane, is in as good a position as, but in no better position than, the beneficiary of an insured whose death was caused accidentally and involuntarily by the same means. Under the construction contended for by the appellant, a policy which insured only against death from a stroke of lightning would have to be construed as covering death caused by any violent means which an insured might use in doing away with himself, provided he was insane at the time.

The difficulty of making a suicide statute such as that here involved—which is entirely appropriate to straight life insurance—fit policies of limited coverage against death by accident, is well illustrated by the present controversy and was pointed out by this Court in Business Men's Assurance Co. v. Scott, 17 F.2d 4, in which we expressed the view that the Colorado Suicide Statute was never originally intended by the legislature of that State to apply to accident policies carrying death benefits, because of its inappropriateness to such insurance. At the time that case was decided, the Supreme Court of Colorado had ruled that the statute applied to such policies, but it had not determined whether the statute required them to cover suicide committed by the insured while sane. We refused to go further than the Supreme Court of Colorado had gone in construing the suicide statute of that State, but held, as required by the decisions of that court, that the statute was applicable to a policy insuring against death by accident generally, where the insured was shown to have killed himself while insane. The wisdom of refusing to extend the Colorado statute beyond the limits to which the Supreme Court of Colorado had gone at the time the Scott case was decided by this Court is demonstrated by the fact that thereafter that court, in Capitol Life Ins. Co. v. Di Iullo, 98 Colo. 116, 53 P.2d 1183, held that the Colorado statute did not require that accident policies cover the suicide of an insured while sane. The Supreme Court of Colorado has now held in New York Life Ins. Co. v. West, 102 Colo. 591, 82 P.2d 754, that the statute does not require policies insuring against death by accident, to cover death by suicide while insane if the death is of a kind not covered by the policy. The policy in that case contained the same provisions as the policies here in suit and the insured committed suicide by taking poison while insane. While this Colorado decision is exactly in point, it is, of course, not determinative of this case, which is controlled by Missouri law.

It is conceivable that the Supreme Court of Missouri, when the exact question here presented comes before it, may reach a different conclusion as to the effect of the Missouri Suicide Statute upon such a situation as that presented than has been reached by the Supreme Court of Colorado, by the Springfield Court of Appeals in the Scales case, and by the District Court in this case. We think that those courts were right in construing such statutes as dealing with defenses, and not with coverage. But, in any event, we are satisfied that this Court and the District Court, in determining the effect of the Suicide Statute of Missouri upon the policies in suit, are entirely justified in going no further than the decisions of the courts of Missouri presently require them to go.

The judgment appealed from is affirmed.