**VANN v. UNION CENTRAL LIFE INS. CO.**

No. 2803.

Circuit Court of Appeals, Tenth Circuit.

Jan. 31, 1944.

Rehearing Denied Feb. 28, 1944.

Kenneth Wormwood and Earl J. Hower, both of Denver, Colo. (William T. Wolvington, of Denver, Colo., on the brief), for appellant.

Henry W. Toll, of Denver, Colo. (W. W. Grant, Morrison Shafroth, and Tozier Brown, all of Denver, Colo., on the brief), for appellee.

Before MURRAH, Circuit Judge, and VAUGHT and BROADDUS, District Judges.

BROADDUS, District Judge.

The Union Central Life Insurance Company insured the life of Hardy Vann by two policies, the first October 17, 1932, and the second January 31, 1940. Each policy had attached a rider, which, although differing in form, required an additional payment of the face of the policy in the event death of the insured resulted from accidental means, as outlined and limited in the rider.

Vann committed suicide, while insane, on November 16, 1941. The company paid the amounts due on the policies, except those portions contended as due under the terms of the riders. This suit for these unpaid amounts was brought by the beneficiary of the policies; the first count therein sought a recovery on the first policy, and the second count on the second policy. Upon motion, summary judgment was entered for the company on both counts. The appellant, Rosa H. Vann, beneficiary of the policies, concedes the correctness of the trial court's ruling on the second count, thus leaving for review the ruling of the court denying recovery on the first policy.

The rider to this policy was designated, "Double Indemnity For Death by Accident," and stipulated that, in the event the death of the insured should occur by accident, as thereafter defined, the amount payable would be increased by an additional amount, referred to as the "Double Indemnity Benefit." Death by accident, so far as here material, was defined as death resulting "directly, independently and exclusively of all other causes, from bodily injury effected solely through accidental, external and violent means, and only if such death shall occur within ninety days after the date of such injury; provided that death occurring * * * as a result directly or indirectly of any bodily or mental disease or infirmity or of bacterial infection other than infection occurring simultaneously with and in consequence of an accidental wound * * * or by suicide while sane or insane, or as the result directly or indirectly of injuries intentional-

612

ly inflicted by the insured, is not an accident hereby insured against."

Upon the issuance of the policy, there was in force a section of the Colorado statutes providing that "the suicide of a policyholder of any life insurance company * * * shall not be a defense against the payment of a life insurance policy, whether the suicide was voluntary or involuntary, and whether said policyholder was sane or insane." [1]

Construing that section, the Colorado Supreme Court had held that an accident policy which required payment in the event of death, was to that extent a life insurance policy; that the taking of one's life while insane was an accident; and that to enforce the limitation of a policy barring recovery in case of suicide would in effect "abrogate the statute prohibiting the defense of suicide." London Guarantee & Accident Company vs. Officer (January 1926), 78 Colo. 441, 242 P. 989; Officer vs. London Guarantee & Accident Company (November, 1923), 74 Colo. 217, 220 P. 499.

Later the distinction between life and accident policies was recognized and approved in Capitol Life Insurance Company vs. Di Iullo, 98 Colo. 116, 53 P.2d 1183, the court holding therein that the statute did not authorize recovery on a policy for accidental death where the insured committed suicide while sane. In New York Life Insurance Company vs. West, 102 Colo. 591, 82 P.2d 754, wherein the statute was again considered, the distinction between life and accident policies was further accentuated, the holding in the Officer Cases limited to the facts therein, and the construction of the statute and interpretation of the Officer Cases sought by the appellant denied. The court there announced that it was "within neither the intention nor the power of the Legislature or courts to compel an insurance company to write a policy, or prevent it from limiting a policy written to any specific accident or class of accidents;" and that as liability for death by poison was excluded from the policy considered,

death by poison with suicidal intent was not within the policy and the statute did not make it so.

 The double indemnity provisions of the policy excluded death occurring as a result directly or indirectly of any mental disease or infirmity. The death of the insured by his own hand while insane resulted from mental infirmity. Mandels vs. Guardian Life Ins. Co., 10 Cir., 115 F.2d 994, affirming 32 F.Supp. 619.

It follows that the death for which the beneficiary sought recovery was not within the terms of the rider to the policy, and there may be no recovery.

The judgment of the lower court is affirmed.

---

[1] The section was enacted by the General Assembly of Colorado of 1903 (Laws 1903, ch. 119, p. 257) and carried forward with little change in subsequent enactments, (Laws 1907, ch. 193, sec. 55, p. 469; Laws 1913, ch. 99, sec. 59, p. 358). An Amendment of 1933 validated provisions in policies, thereafter issued, barring recovery where death resulted from suicide, (Laws 1933, ch. 113, p. 634). In 1935 the Colorado assembly declared the section was not intended to apply to provisions of policies insuring against accidental death, (Laws 1935, ch. 136, p. 573). By reason of these amendments, appellant conceded there was no liability on the policy issued after the effective date of the last amendment, and for which recovery was sought in the second count of appellant's petition.