Wolford, Appellant, *v.* The Equitable Life
Insurance Company of Iowa.

Argued October 3, 1947. Before RHODES, P. J., HIRT,
RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Thomas D. Caldwell,* with him *Carl B. Stoner* and
*Caldwell, Fox & Stoner,* for appellant.

*Samuel A. Schreckengaust, Jr.,* with him *McNees,
Wallace & Nurick,* for appellee.

Opinion by Arnold, J., March 8, 1948:

Defendant issued its policy of insurance upon the life of George Howard Wolford, who died December 22, 1945, from injuries received in an automobile accident. The policy provided for the payment of double indemnity or liability in the event of death by accidental means. All facts were stipulated and the trial judge gave judgment in favor of the plaintiff only for the premiums paid, and denied recovery of the indemnity, and the beneficiary appealed.

Defense was made under a clause of the policy reading: "19. The provisions for the Disability and the Double Indemnity benefits . . . shall terminate: . . . (c) In the event that the insured shall engage in military or naval service in time of war . . ." The insured's death by accidental means was admitted.

On May 11, 1942, the insured entered the military service of the United States in time of war and became a captain. The insurance company had no knowledge, until after his death, that he had entered the military service.

By virtue of a week-end leave of absence from his military service he was, on December 22, 1945, a passenger in an automobile, and was en route to his home in Harrisburg when the accident occurred which caused his death.

The plaintiff-appellant contends that the word "engage" (in clause 19 of the policy) means more than merely "status", and that it signifies "action" or "active participation", and under the policy denotes such action as increased the hazard.

Clause 19 is not a "result" clause as in *Selenack, Admr., v. Prudential Insurance Co. of America,* 160 Pa. Superior Ct. 242, 50 A. 2d 736, in which the policy provided for an exclusion of liability " 'if the death . . . resulted . . . from having been engaged in military or naval service in time of war.' " Such a limitation clause has generally been construed as being tied into the doc-

trine of causation, so that unless the accident and death *resulted*, i. e., were caused by, or flowed from, the military service, the insurer was held liable. In other words, in the "result" clause cases, mere status is usually held not to be determinative of liability, the real question being causation or increased hazard. Many of such cases are collected in 137 A.L.R. 1263, and supplemental annotations. The rules as to matters of construction are fully set forth in the opinion of the court below, and are also collected in *Jorgenson v. Metropolitan Life Ins. Co.* (N. J.), 55 A. 2d 2.

The construction of such provisions in insurance contracts depends entirely upon the precise wording of the particular policy. In the present contract the insurer, by plain words, provided for the *termination* of the double indemnity provisions upon the happening of an event. What event? The contract answers this without ambiguity: "[In] the event that the insured shall engage in military . . . service in time of war." Since the event bears no relationship to cause and effect, the policy terminated when the insured entered the military service [1] of the United States in time of war, for then he was *engaged* in the military service and was required, except for leaves or furloughs, to give his entire time thereto. We construe the word "engaged" [2] to mean "enter into" where used in the termination clause,[3] but not necessarily so in a result clause.

We adopt from the able opinion of the court below the following: "Thus, when here, in time of war, the insured exchanged his civilian status for that of a soldier; he temporarily abandoned any occupation or calling in which he theretofore may have been engaged. There-

---

[1] The precise moment when he engaged in the military service is here of no importance, since he had been continuously in the Army for more than three years when he was killed.

[2] The word "engage" is derived from the word "gage" meaning "pledge."

[3] Decisions in other states are not of too much use, but see the similar conclusion reached in *Merchants Nat. Bank of Mobile v. Commonwealth Life Ins. Co.* (Ala.), 29 So. 2d 347.

after, his time and energies were subject to military control and direction. This was true no matter where he was or what he happened to be doing. Under such circumstances, we have no hesitancy in holding that in the instant case *status* and not *character of service* was the test of termination of the double indemnity feature and that beginning with May 11, 1942, and continually thereafter, the insured did 'engage in military . . . service in time of war.' To hold otherwise would necessitate a strained construction, contrary to established law. For remembering always that termination is involved here, to make the character of service the test would require the insurer to keep a close check on the insured's movements to determine if any one of them would warrant discontinuing double indemnity. Surely, such a result was never intended, nor could such an interpretation be upheld." If, before the accident which caused his death, the insured had been discharged from the army and returned to civilian life, the double death benefit provisions would not have been in force, because the provisions were *terminated* and not *suspended.*

Appellant also contends that the construction given by the court below creates an ambiguity between the 19th clause and the 17th clause of the policy reading: "The double indemnity benefit in case of accidental death . . . shall not be payable . . . in case such death resulted directly or indirectly from . . . (c) any military or naval service in time of war . . ."

But the subject matter of the two clauses is entirely different. Clause 17 is an exclusion where death *results,* directly or indirectly, from any military service in time of war, commonly called a "result" clause (and having to do with causation). The 19th clause is a clause terminating the contract upon the happening of an event, i. e., engaging in military service. Hence there is no ambiguity. Thus if clause 19 had been waived [4] by the

[4] As in *Swett v. Life & Casualty Ins. Company of Tennessee* (Ga.), 44 S.E. 2d 518; 12 C.C.H. Life Cases 861.

carrier, the question would still remain whether under clause 17 the accidental death resulted directly or indirectly from military service. The two clauses are independent and can stand together.

Judgment affirmed.