## MULLEN v. PACIFIC MUT. LIFE INS. CO.
### No. 9933.

United States Court of Appeals
Third Circuit.

Argued Nov. 10, 1949.

Decided Jan. 18, 1950.

Leon Rosenfield, Philadelphia, Pa., for appellant.

George T. Steeley, Philadelphia, Pa., for appellee.

Before MARIS, GOODRICH and O'CONNELL, Circuit Judges.

GOODRICH, Cricuit Judge.

This appeal presents a question of the effect, in an income insurance policy, of an exception clause having to do with service by the insured in the armed forces. Both sides moved for summary judgment in the court below. The trial judge rendered judgment for the defendant.

In 1928, defendant insurance company issued a "non-cancellable income policy" to the plaintiff, Dr. Edward A. Mullen. The policy was delivered in Pennsylvania and the parties are agreed that the question in this case is one of Pennsylvania law.

Paragraph 21 of the policy begins "This insurance does not cover * * *." [1] The clause with which we are immediately con-

---

1. "21. This insurance does not cover, (1) any disability for which the Insured is not necessarily and regularly attended by a legally qualified physician other than the Insured; provided, however, that this requirement shall be waived in the event such attendance is declared by medical authority satisfactory to the Company to be unnecessary; (2) any attempt at suicide, sane or insane; (3) disability resulting wholly or partly, directly or indirectly from (a) bodily injury sustained or sickness contracted while the Insured is engaged in military or naval service in time of war, (b) bodily injury or sickness caused by war or by any act of war, (c) bodily injury, fatal or non-fatal, sustained, or sickness contracted by the Insured while in or on any vehicle or mechanical device for aerial navigation, or in falling therefrom or therewith, or while operating or handling any such vehicle or device, (d) bodily injury sustained or sickness contracted except while the Insured is within Canada or Europe or the United States (not including Alaska, Panama Canal Zone or the insular possessions of the United States), or while traveling between them by regular lines of passenger conveyance (not including aerial conveyance)."

cerned is (3). It has to do with "disability resulting wholly or partly, directly or indirectly from (a) bodily injury sustained or sickness contracted while the Insured is engaged in military or naval service in time of war, (b) bodily injury or sickness caused by war or by any act of war. * *"

Dr. Mullen was a medical officer in the United States Naval Reserve for several years prior to December 2, 1940. On that day he entered on active duty and was stationed, first, in Philadelphia, second, on the U.S.S. William P. Biddle, an assault transport, and third, at the United States Naval Training Station, Bainbridge, Maryland. While on duty at that station he contracted scarlet fever on March 16, 1945. On July 6, 1945, while still on duty at Bainbridge, he suffered what was diagnosed as an attack of acute myocarditis. As a result of this disease he is disabled. There is no doubt, we take it, that the Company is liable unless it is relieved of liability by the exception clause quoted above. The defendant says that this provision in the contract relieves the insurer from liability, while the plaintiff contends that the exclusion relates only to infirmities which result from military or naval service.

If this clause were looked at by a layman who could read intelligently we think there would not be the slightest doubt as to what result he would reach. The company promised to make certain payments if certain things happened to the insured. Then it is provided in the contract that the company is to be relieved if the disability insured against comes from a sickness contracted "while the insured is engaged in military or naval service in time of war." The language does not say anything about sickness resulting from service in the armed forces. Dr. Mullen was certainly engaged in the naval service. His illness certainy came at a time when the nation was at war. It may well be that if the Doctor, though a member of the reserves, had not been called into active duty he would not have been "engaged" in naval service. But his duties as a naval surgeon were just as much a part of war service as those of a gun crew on a fighting ship. As a matter of original impression, if the question were simply that of concluding what the parties contracted for in the language found in the policy, we would find it impossible to see any problem of semantics presented.

If the question were as simple as that just stated we would have no lawsuit, or at least no appeal. But with regard to clauses like this, as well as nearly any other question involving the effect of an insurance contract, we find evidences of a great amount of litigation, with courts aligning themselves on the insured's or the insurer's side of the controversy. We think that the form the insurance contract has taken is responsible for much of this litigation. The policy in suit here has three pages of printed material, some of it in type smaller than eight point. Attached to the policy, and made a part of it, are four additional sheets. All of this, of course, is on a form supplied by the insurer. We think that what has happened in the course of the development of insurance law is that the insurers in their quantity of fine print have inserted provisions relieving themselves from obligations which premium payers not unreasonably think they are entitled to have performed, and feel as Macbeth felt about the representations of the weird sisters, that they

"* * * keep the word of promise to our ear, and break it to our hope. * *"

The policy as a legal document becomes something different from a protective plan of insurance which an insurance salesman sells to a policyholder.

The consequence of this over-protection which the insurers give themselves is that courts are moved to find problems in interpretation of policies to overcome what would otherwise be the plain meaning of carefully selected language. That we think is illustrated in the divergence of view with regard to the legal effect of language as clear as that to be found in the insurance policy in the case before us.[2]

2. See Notes, 1947, 168 A.L.R. 685, 689–692; 1942, 137 A.L.R. 1263, 1268–1276, and especially the discussion of whether the word "engaged" looks to a status or

It is not our function in this litigation to rewrite the law of insurance. It is, rather, a much more modest one, namely, to find out as best we can what the Pennsylvania courts would say if confronted with the exact problem of this case. It is agreed by both sides that there is no Pennsylvania decision precisely upon the point. As Judge Arnold points out in a footnote to one of the Pennsylvania opinions, "decisions in other states are not of too much use" in interpreting clauses like this one.[3] We think there is a good deal of importance to be found in the Pennsylvania Supreme Court decision in Urian v. Scranton Life Insurance Company, 1933, 310 Pa. 144, 165 A. 21. That was a case where an insurer had protected itself from double indemnity liability by stipulating that if the accidental death came from "poisoning" it was not to be responsible. Here, too, the court found contradictory decisions, with attempted distinctions between "poisoned" and "poisoning." Mr. Justice Simpson said that the court adhered to the rule that in case of doubt language should be resolved in favor of the assured. But he pointed out that in a number of cases elsewhere the court had created the doubt by a species of argument which would not be tolerated in any other kind of contract and then, having found the doubt, resolved it in favor of the insured. Speaking for the court, he said that the paramount rule is that where language is clear and unambiguous it cannot be construed to mean otherwise than what it says. And, he said, "we shall continue to adhere to it, so long as our judicial system provides for an interpretation of contracts made by the litigants, and not to the making of contracts for them."

There are several other Pennsylvania decisions from the Superior Court and the Courts of Common Pleas which deal with clauses exempting the insurer from liability under certain circumstances. The language in them varies as, of course, it must when opinions are written by judges with differing vocabularies and varying abilities to say precisely what they mean. But we find no trend in the Pennsylvania decisions which indicates that Pennsylvania courts do not apply the exemptions as they are written.

We do find conflicting Common Pleas decisions on whether the phrase "engaged in military or naval service" looks to the insured's status or to a causal connection,[4] and the use of that phrase by the Superior Court to illustrate a status-type exemption.[5] Another Superior Court decision holds that "engage" means "enter into," but the ruling is expressly limited to termination clauses.[6]

There are a few Pennsylvania decisions construing exemption clauses liberally in favor of the insured,[7] but in another line of decisions, many of them more recent, the state courts have taken exemption clauses as they found them and applied them in favor of the insurer when their plain language leaned toward that result. Conspicuous among the latter are Urian v. Scranton Life Insurance Company, 1933, 310 Pa. 144, 165 A. 21; Janco v. John Hancock Mutual Life Ins. Co., 1949, 164 Pa. Super. 128, 63 A.2d 138; Quigley v. Western & Southern Life Ins. Co., 1939, 136 Pa. Super. 27, 7 A.2d 70; Westbrook v. Continental Life Ins. Co., 1934, 111 Pa.Super. 563, 170 A. 395; cf. McCowley v. North

---

result exclusion. See also Day, The Applicability of War Risk Exclusion Clauses to Deaths from Ordinary Causes, 19 Rocky Mt. L.Rev. 242 (1947).

3. Wolford v. Equitable Life Ins. Co., 1948, 162 Pa.Super. 259, 57 A.2d 581, 582.

4. Compare the dicta of Badanjak v. Metropolitan Life Ins. Co., 50 Pa.Dist. & Co. 559 (C.P. Beaver 1944), with Throne v. Pennsylvania Mut. Life Ins. Co., 58 Pa.Dist. & Co. 109 (C.P. Luzerne 1945), and Kieninger v. The Home Life Ins.

Co., 3 Pa.Dist. & Co. 111 (C.P. Phila. 1923).

5. Selenack v. Prudential Ins. Co., 1947, 160 Pa.Super. 242, 50 A.2d 736, 738.

6. Wolford v. Equitable Life Ins. Co., 1948, 162 Pa.Super. 259, 57 A.2d 581.

7. Arnstein v. Metropolitan Life Ins. Co., 1938, 329 Pa. 158, 196 A. 491; Andrzejewski v. Prudential Life Ins. Co., 1936, 321 Pa. 543, 184 A. 51; Provident Trust Co. v. Equitable Life Assurance Society, 1934, 316 Pa. 121, 172 A. 701.

American Accident Ins. Co., 1942, 150 Pa. Super. 540, 29 A.2d 215.

So here, too, the insurer gets the benefit of its clause 21. The fact that if the insured had an Iowa contract he might have better luck does not change our responsibility to apply Pennsylvania law.

The judgment will be affirmed.

Judge O'CONNELL participated in the hearing and consideration of this case but died before it was decided.