No. 14,228.

NEW YORK LIFE INSURANCE COMPANY *v.* WEST.

(82 P. [2d] 754)

Decided March 14, 1938. On rehearing; judgment reversed July 11, 1938. Petition of defendant in error for rehearing denied September 19, 1938.

Mr. HENRY McALLISTER, Mr. JOHN O. RAMES, Mr. LOUIS H. COOKE, of counsel, for plaintiff in error.

Mr. DARWIN D. COIT, Mr. STANLEIGH C. CRISPELLE, for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE BURKE delivered the opinion of the court.

PLAINTIFF in error is hereinafter referred to as the company, defendant in error as Mrs. West, and her deceased husband Sidney H. L. West, as West.

The record presents for consideration the effect of an exception in a contract and the simple question is whether that exception, otherwise clear, definite and valid, is nullified by our statute and decisions.

The company, by its policy, promised to pay Mrs. West $3,000 upon receipt of due proof of the death of West, "or $6,000 if such death resulted from accident as defined under 'Double Indemnity' and subject to the provisions therein set forth." A part of the "Double Indemnity" clause reads: "Double Indemnity shall not be payable if the insured's death resulted from self-destruction, whether sane or insane; from the taking of poison or inhaling of gas, whether voluntary or otherwise." West died May 8, 1933, and the company promptly paid $3,000. The complaint, filed August 3, 1936, alleged that "the insured while insane, committed suicide by taking cyanide of potassium, a poison," but that the company has "refused to pay the double indemnity." The company's demurrer for want of facts was overruled. The point thereunder presented was the "poison" exception. It was again raised by answer and reply. On the trial the

company objected to evidence of death by suicide insane, as immaterial. The objection was overruled. The court held the poison exception invalid and gave Mrs. West judgment. To review that judgment this writ is prosecuted.

Our applicable statute, if any, reads: "The suicide of a policy-holder * * *, of any life insurance company doing business in this state, shall not be a defense against the payment of a life insurance policy, whether said suicide was voluntary or involuntary, and whether said policy-holder was sane or insane." C. L. 1921, §2532.

 It is undisputed that West committed suicide while insane, that under our decisions such suicide is an accident, and that the statute expresses a public policy which can not be nullified by any scheme or device. *Officer v. Accident Co.*, 74 Colo. 217, 220 Pac. 499.

Counsel for Mrs. West say this is a policy insuring generally against all accidental death; that from this general provision certain exceptions are carved; that one of these, suicide insane, is forbidden by the statute (which is admitted); that another, death by poison (if taken by an insane person with suicidal intent) is but an indirect method of doing what can not be done directly, i. e., nullifying the statutory inhibition and frustrating the state's public policy. Counsel for the company say the only statutory inhibition is against *defending* on the ground of suicide; that the company not only made no such defense but protested the injection of the question (which is true and possibly technically conclusive); that an accident policy may be limited by the company to a single accident, or class of accidents, or several classes (which is clear); *Hawkeye Commercial Men's Ass'n v. Christy*, 294 Fed. 208, 213; and that this can be done by covering all accidents save those of certain classes, specifying the exceptions. This last is denied if, as here, the exception is the means by which death was accomplished by a suicide insane.

We get little help from authorities. Most of those cited

we omit. Either the propositions they lay down are here undisputed or that here in issue was not therein involved. The reason for this seems to be that only Missouri and Utah have, or have had, similar statutes, and our own has now been materially amended. Section 76, chapter 87, '35 C. S. A. No Utah cases have come to our notice.

*Whitfield v. Aetna Life Ins. Co.*, 205 U. S. 489, 27 Sup. Ct. 578, 51 L. Ed. 895, dealt with the Missouri statute. But since there the defense was suicide and the means employed not excepted we do not find it helpful.

*Applegate v. Travelers Ins. Co.* (St. Louis Ct. of App. Mo. 1910), 153 Mo. App. 63, 132 S. W. 2, involved a policy which paid one-tenth of the face in case of death by poison. Death was self inflicted by poison and the company was held to the full face of the policy.

*Scales v. Natl. Life & Acc. Ins. Co.* (Springfield Ct. of App. Mo. 1916), 186 S. W. 948, involved a policy which paid one-fifth of the face for death by poison. Death was self inflicted by poison and the company was held only to one-fifth the face of the policy.

The foregoing decision, being in conflict with the conclusion of the St. Louis Court of Appeals in the Applegate case, was, under the law of Missouri, duly "certified to the Supreme Court for final determination." Its disposition there is reported in 212 S. W. 8 (1919). The judgment of the Court of Appeals was affirmed, but on the sole ground that the death was by suicide sane, hence no accident. Thus the question on which the St. Louis Court of Appeals and the Springfield Court of Appeals differed remained unsettled. The only light thrown thereon by the Missouri Supreme Court is in this significant statement: "The statute does not put into the policy a single obligation other than those mentioned in the policy. It merely takes out of the policy the defense of suicide as to the obligations mentioned in that policy." Applying that interpretation it is clear that since the policy before us excludes all liability for death by poison, and that exclusion is good in case of suicide sane, by poison, it is

equally good in case of suicide insane, by poison; otherwise the statute has added an obligation to the policy.

It might be sufficient to here say that we approve the reasoning of the Springfield court in the Scales case and disapprove that of the St. Louis court in the Applegate case, but some further observations appear to us justified.

██ ██ It seems clear to us that it is within neither the intention nor the power of the legislature or courts to compel an insurance company to write a policy, or prevent it from limiting a policy written to any specific accident or class of accidents. It may cover or exclude death by any means. That proposition is impregnable in reason, unanimously supported by the authorities, and untouched by public policy. The law simply says that every death of a sane person, not self inflicted, which creates a liability, shall likewise create a liability where death is self inflicted by an insane person. But if, by the express terms of the policy, liability is excluded in the first instance it is excluded in the second. The fact that one who dies by poison took it with suicidal intent while insane does not bring him within the terms of a policy which does not insure against death by poison. The company's defense here is simply death by poison, against which it did not insure, and the real question is, may Mrs. West prove suicide insane and thereby convert a policy which did not cover death by poison into one which does? Certainly not.

██ Finally, conceding everything to the reasoning of counsel for Mrs. West, and the authorities cited in support thereof, that can be claimed for them, the most that could possibly be granted is that a difficult question is presented and a doubtful answer suggested. But the statute is a limitation on the general right of contract and such statutes are strictly construed. In case of doubt they are resolved in favor of the right. *Tinker v. Modern Brotherhood of America,* 13 Fed. (2d) 130, 132.

The demurrer to the complaint should have been sustained. That conclusion obviates the necessity of examining certain cross assignments.

The judgment is accordingly reversed and the cause remanded with directions to dismiss at the costs of defendant in error.

MR. JUSTICE HILLIARD and MR. JUSTICE BAKKE dissent.

MR. JUSTICE BOUCK not participating.