TEMMEY, et al, Appellant, v. PHEONIX MUTUAL LIFE INSURANCE CO., Respondent

(34 N. W.2d 833.)

(File No. 8982. Opinion filed December 2, 1948)
Rehearing Denied Jan. 25, 1949.

Charles P. Warren, of Pierre, and Temmey & Luby, of Huron, for Appellants.

Boyce, Warren, Murphy & McDowell, of Sioux Falls, for Respondent.

SICKEL, J. This action was brought on a life insurance policy. On January 22, 1941, the Phoenix Mutual Life Insurance Company of Hartford, defendant, insured the life of Leo A. Temmey, Jr., for the sum of $2,500, and named Rose Temmey and Leo A. Temmey, parents of the insured and plaintiffs in this action as the beneficiaries. The death of insured occurred on May 18, 1945, while the policy was in force. Defendant denied liability on the policy and plaintiffs brought this action. The action was tried in the circuit court on a stipulation of facts, and judgment was entered for defendant. Plaintiffs have appealed.

The policy of insurance involved in this action was dated January 22, 1941, and the insured was at that time seventeen years, ten months and five days of age. He was not then in the armed forces of the United States but was later inducted into the Navy. His death occurred on May 18, 1945, while he was a member of the armed forces engaged in a military mission in the Pacific Ocean. Attached to the insurance policy is a rider designated "Special Aeronautics Provision," the material parts of which read as follows: "It is hereby provided that death of the insured resulting directly or indirectly from participating in aeronautics, as passenger or otherwise, or from exposure to any hazard incident thereto, is a risk not assumed by the Company under any of the terms of the policy; but in the event of such death the Company will pay to the beneficiary the amount of the reserve under the policy." The insurance policy does not exclude hazards which are incidental to war, nor fare-paying passengers.

Respondent's contention is that the death of the insured resulted "directly or indirectly from participating in aeronautics, as passenger or otherwise, or from exposure to any hazard incident thereto." It contends that the language of this aeronautics provision excludes the insured while riding in aircraft whether he took part or aided in the operation of the aircraft or not. Appellants dispute this contention. They also claim that even though the insured was "participating in aeronautics" at the time of his death, such death did not result directly or indirectly from such participation.

■ According to the language of the policy, liability of the insurer is excluded only when the cause of death is incident to the ordinary risk of aeronautics. Neel v. Mutual Life Ins. Co. of New York, 2 Cir., 1942, 131 F.2d 159.

In the case of Bull v. Sun Life Assur. Co., 7 Cir., 1944, 141 F.2d 456, 459, 155 A. L. R. 1014, certiorari denied 323 U. S. 723, 65 S. Ct. 55, 89 L. Ed. 581, the policy of insurance was issued in 1939. On February 5, 1942, the insured, then a lieutenant is the United States Naval Reserve, was commanding officer and alternate pilot on a seaplane on patrol duty in the Pacific Ocean. The plane was damaged by Japanese anti-aircraft fire and made an emergency landing in the sea near an island. The insured was standing on the fuselage trying to launch a rubber boat in an attempt to escape. While in that position a Japanese seaplane dived low and strafed the plane with machine gun fire, and the insured was never seen again. In the opinion the court says: "We think the true intent of the parties was to exclude the risks of aviation and to include the risks of war. * * * The provision of the policy relied upon as a defense by the defendant becomes operative only where the insured meets 'death **as a result,** directly or indirectly, of service, travel, or flight in any species of aircraft.' (Emphasis ours.) Death in this instance **resulted directly** from the strafing by the Jap plane. The evidence clearly supports that view. The policy does not say that it shall not apply if the death is **contributed to** directly or indirectly by the service, travel, or flight in the aircraft. The policy deals with results and not causes or contributing causes. Aviation may have been a contributing cause, but that did not make the death an indirect result of aviation. No risk of aviation resulted in death. A risk of war resulted in death. That was a risk not excluded by the policy."

The case of Green v. Mutual Benefit Life Ins. Co., 1 Cir., 1944, 144 F.2d 55, 57, was one in which the policy excluded death occuring by reason of any aerial flight. The insured was the pilot of a Navy scout bomber. While engaged in carrier landing a heavy driving snowstorm reduced visibility to zero. The insured made a forced landing

in the water, and died from drowning and exposure. In that case the court said: "The natural and obvious meaning of the aviation clause in the case at bar is that the insurer declines to assume those extra risks of death ordinarily associated with aerial flight. Where death admittedly results from the operation of one of those familiar and popularly understood risks there cannot be any issue of proximate causation for a jury to determine." In reviewing the Bull case the court said: "We are not inclined to disagree with this case. It may reasonably be said that death by the deliberate act of a third person is not of the risks ordinarily associated with aerial flight."

In the case of Boye v. United Service Life Ins. Co., App. D. C. 1948, 168 F.2d 570, the policy excluded liability if death was "due to operating or riding in any kind of aircraft." The policy did not exclude hazards incident to war. The insured was a lieutenant acting as pilot of a B-17 bomber engaged in a mission over Germany. The plane was reported missing on August 25, 1944, and it was believed to have been lost as a result of enemy anti-aircraft fire. There was no other information regarding its disappearance. The opinion of the court states: "If Lieutenant Boye's death resulted directly or indirectly from gunfire, as the District Court thought and we think it probably did, we think it resulted from a risk of war that the policy did not exclude and not from a risk of aviation that the policy did exclude. We think the case is much the same as if the policy had excluded death 'due to operating or riding in an automobile' and the insured had been killed by gunfire while driving an army car."

■ The respondent in this case seeks to avoid liability on the policy on the ground that the death of insured was due to an excluded risk, and the burden is therefore upon respondent to prove the facts constituting such defense. 46 C. J. S., Insurance, § 1319(4a); Honrath v. New York Life Ins. Co., 65 S. D. 480, 275 N. W. 258, 112 A. L. R. 1272. The facts in this case consist largely of War Department documents admitted in evidence on stipulation of the parties. From these documents it appears that at the time of death

the insured was a crew member of a Navy plane flying in the Pacific Area; that he was then acting as aviation radioman and machine gunner on the plane. The plane crashed on a reef near Ormed Island. The first report of Ross T. McIntire, Vice Admiral, states that the death of the insured was the "Result of enemy action." The second report by the same officer, dated July 9, 1946, made on behalf of the Bureau of Aeronautics, states: "The records of this Bureau show that Temmey was a member of the crew and serving aboard a Navy Plane on an authorized flight over enemy held territory. The plane crashed in the reef 200 yards north of Ormed Island, Wethe Atell, when the pilot lost control of the plane. The exact cause of the crash was not determined but it appears possible that Japanese anti-aircraft fire may have damaged the plane. * * * Attention is invited to the fact that Temmey was an Aviation Radioman serving in a Navy plane and performing his regularly assigned duties as an Aircrewman at the time of the crash."

As we have stated, the burden was upon the insurer to prove that the death of insured resulted from the excluded risk. While the evidence does not positively establish the fact that the death of insured was caused by enemy gun fire, the only evidence in the record relating to the cause of death tends to support that theory. It must be observed that there is no evidence whatsoever to show that the crash resulted from any of the risks ordinarily associated with aeronautics. The insurer has failed to sustain the burden of proving its defense and we, therefore, conclude that the death of insured resulted from a risk of war and not from "participating in aeronautics, as passenger or otherwise."

Judgment reversed.

ROBERTS, P. J., and RUDOLPH and HAYES, JJ., concur.

SMITH, J., dissents.