No. 16,592.

MUTUAL LIFE INSURANCE COMPANY OF NEW YORK
*v.* DANIELS.
(244 P. [2d] 1064)

Decided May 5, 1952.    Rehearing denied June 2, 1952.

Messrs. PERSHING, BOSWORTH, DICK & DAWSON, Mr.
WINSTON S. HOWARD, Mr. ROBERT M. JOHNSON, for plaintiff in error.

Mr. H. T. McGarry, Mr. Ivor O. Wingren, for defendant in error.

*En Banc.*

Mr. Chief Justice Jackson delivered the opinion of the court.

This case involves the interpretation of a policy of life insurance issued by the Mutual Life Insurance Company of New York, hereinafter called the insurer, on the life of Cady L. Daniels, Jr., hereinafter called the insured, in the face amount of $10,000. At the time of the death of insured, plaintiff in the trial court, defendant in error here, was named as the beneficiary and will be so designated herein.

Insured died April 11, 1945, as a result of a crash resulting from the left engine burning out and falling from a military plane which he was piloting as an officer in the United States Air Force.

Under date of February 5, 1940, insured had filled out an aviation form of questionnaire for the insurer as a supplement to his application. This questionnaire related generally to the applicant's activities in the field of aeronautics. Neither party is asserting that this questionnaire was endorsed on the face of the policy, but that it merely accompanied insured's application. Subsequently, on March 29, 1940, insured had signed a statement, witnessed by an agent for the insurer, reading as follows:

"Death as a result of operating or riding in any kind of aircraft, whether as a passenger or otherwise, *except riding as a fare-paying passenger in a licensed passenger aircraft provided by an incorporated passenger carrier and operated by a licensed passenger pilot on a scheduled passenger air service regularly offered over an established passenger route which is between definitely established airports and which does not involve a flight of more than six hundred successive miles over water,* is

a risk not assumed under this Policy and if the Insured shall die as a result, directly or indirectly, of such operating or riding in an aircraft, the amount payable shall be *limited to the reserve* held at the date of death for the face amount of this Policy and for any dividend additions. Any accumulated dividend deposits will be payable in addition to such reserve." This same clause, quoted above, was endorsed on the face of the policy itself under date of April 2, 1940.

One of the printed paragraphs of the policy is the incontestable clause, reading as follows: "Except for non-payment of premiums, this Policy shall be incontestable after two years from its date of issue, but if the age of the Insured shall have been misstated, the amount payable by the Company shall be such as the premium paid would have purchased at the correct age." This clause was inserted in compliance with the provisions of section 57, chapter 87, '35 C.S.A., which reads in part as follows:

"It shall be unlawful for any foreign or domestic life insurance company to issue or deliver in this state any life insurance policy unless the same shall contain the following provisions:     *   *   *

"2. A provision that the policy shall constitute the entire contract between the parties and shall be incontestable after it shall have been in force during the lifetime of the insured for two years from its date, except for non-payment of premiums and except for violation of the conditions of the policy relating to naval and military service in time of war, or other prohibited risks, and at the option of the company provisions relative to benefits in the event of total and permanent disability and provisions which grant additional insurance specifically against death by accident may also be excepted.

*   *   *

"4. A provision that if the age of the insured has been misstated, the amount payable under the policy shall be

such as the premium would have purchased at the correct age. * * * "

The trial was to a jury. At the conclusion of plaintiff's evidence, counsel for defendant moved for a directed verdict in favor of plaintiff for $1,371.64, being the amount of premiums paid on the policy less dividends paid, plus interest; and counsel for plaintiff moved for a directed verdict for the full face of the policy plus any additions to which plaintiff would be entitled as a death claim. The trial court denied the motion of defendant and granted plaintiff's motion for a directed verdict in the amount of $12,958.30, and formal judgment was entered accordingly.

Counsel for the insurer argue their six specifications of error under three headings: (1) Insured's policy specifically excluded risk of death from aviation; (2) Colorado's incontestability statute does not concern or restrict the insurer's right to limit the risk assumed, but merely prohibits contesting the policy's validity; and (3) the aviation rider is not limited to civilian aviation.

The points raised in this case make it one of first impression in this jurisdiction. The trial court referred to this in its remarks, and also noted a difference in the authorities in other jurisdictions. Counsel for the beneficiary take the position, which the trial court adopted: (1) That, if the insurer intended to relieve itself of any liability under the policy from death caused from aviation, such a provision or limitation should have been included in the incontestable clause of the policy; and (2) that there was an inference that any exclusion of risk concerning aviation was limited to civilian aviation and that the exclusion did not cover so-called military or naval aviation.

We are of the opinion that the great weight of authority is contrary to these two contentions. It is argued that, because the aviation rider was not included as an exception in the incontestable clause, it ceases to ap-

ply after the policy has been in effect for more than two years. We believe that counsel by this argument overlooks the purpose of an incontestable clause in a policy.

The relation of the incontestable clause to the policy has been set forth by Williston on Contracts (revised edition), volume 3, page 2280, as follows: "In determining whether the incontestable clause is applicable to a given situation a distinction should be noted between the matters of defense going to the invalidity of the whole policy on the one hand, and on the other hand provisions relating to excepted risks. The incontestable clause is intended, not to enlarge the scope of the insurer's promise so as to include liability for death due to causes which are excluded either by express terms of the policy or by implication of law, but to make certain the enforceability of the promise as set out in the policy. Properly interpreted, therefore, the incontestable clause does not exclude a defense based on a suicide clause. Such a defense does not contest the validity of the policy, as does a defense of fraud in procuring the policy; it supports the policy, but asserts that by its terms the insurer is not bound to pay where death is caused by suicide. The contrary decisions which regard the two provisions as conflicting, and which, on the principle of interpreting against the insurer, hold that the incontestable clause prevails over the other, fail to observe this distinction. *The same reasoning is applicable to a provision excluding, from the risk assumed by the insurer, death caused by engaging in aviation or in a forbidden occupation, or due to the insured's engaging in crime.* For the same reason a provision in an automobile liability insurance policy excluding coverage in case of operation of the automobile by a person under the legal age limit was held a good defense to an action by an injured third person against the insurer." (Italics supplied.)

This discussion by Williston has been either quoted or referred to in numerous opinions. Chief Judge Cardozo

in *Metropolitan Life Insurance Co. v. Conway*, 252 N.Y. 449, 452, 169 N.E. 642, expressed the same situation in the following words: "The provision that a policy shall be incontestable after it has been in force during the lifetime of the insured for a period of two years is not a mandate as to coverage, a definition of the hazards to be borne by the insurer.. It means only this, that within the limits of the coverage, the policy shall stand, unaffected by any defense that it was invalid in its inception, or thereafter became invalid by reason of a condition broken. Like questions have arisen in other jurisdictions and in other courts of this State. There has been general concurrence with reference to the answer." (Numerous cases are then cited.)

Reference is made in plaintiff's brief to the fact that the Conway case, supra, may later have been overruled by a New York statute (1939). For two reasons we are not inclined to agree with plaintiff in this diagnosis: (1) a reading of the statute does not seem to confirm this, and (2) the case of *New York Life Ins. Co. v. Veit, et al., as executors*, 294 N.Y. 222 (1944), 62 N.E. (2d) 45, quotes with approval a portion of the opinion in the Conway case which we have already quoted in our opinion.

In 17 A.L.R. (2d) 1051 an annotation, which had not been published at the time of the trial of this case, on the subject of construction and provision of life or accident policy relating to aeronautics, reads: "Accordingly, it has been held in all the later cases that a clause in an insurance contract excepting or limiting liability where the injury or death of the insured results from his connection in some manner at the time thereof with aviation or aeronautics is not affected by an incontestability clause appearing in the same policy, and therefore an insurer is not, by reason of the presence of the latter clause, barred from urging the liability exception or limitation clause as a defense to a suit upon the policy."

█ Although our opinion in *Union Mutual Life Com-*

*pany of Iowa v. Bailey,* 99 Colo. 570, 575, 64 P. (2d) 1267, did not involve the problem posed in the instant case, we used language there which appears to be in line with the foregoing discussion of the incontestable clause: "It was a reasonable exercise of this [police] power for the general assembly to fix the two-year limitation appearing in the above quoted statute because that period obviously is a time within which, by the exercise of proper diligence, the insurer may discover any fraud perpetrated in the procurement of a policy, and within which it may protect itself against any such fraud."

In *New York Life Insurance Company v. West,* 102 Colo. 591, 82 P. (2d) 754, which likewise did not involve the point presented in the instant case, we said: "It seems clear to us that it is within neither the intention nor the power of the legislature or courts to compel an insurance company to write a policy, or prevent it from limiting a policy written to any specific accident or class of accidents. It may cover or exclude death by any means. That proposition is impregnable in reason, unanimously supported by the authorities, and untouched by public policy."

Counsel for plaintiff relies principally upon the following four cases which we discuss in order:

*Bernier v. Pacific Mutual Life Ins. Co.,* 173 La. 1078, 139 So. 629, 88 A.L.R. 765. This four to three decision, from a civil law jurisdiction having no incontestable statute, is relied upon by those jurisdictions not following the majority rule. In a part of the opinion the aviation clause is assumed to be a limitation on coverage, and in another portion it is treated as a condition of forfeiture in order to avoid the force of the Conway case, supra. The Louisiana court, in the subsequent case of *Allison v. Aetna Life Ins. Co.,* 158 So. 389, 394, seems to have limited the scope of the Bernier case when it quoted with approval the principle laid down in the conway case, that contestable rights are limited to questions involving the

validity of the policy and do not include those involving the area of coverage. The Louisiana court also showed that in the Bernier case the rule of inclusio unis est exclusio alteris was applied on the theory that the incontestable clause contained a limitation on coverage in one field, and not having contained a limitation on coverage in respect to aviation the latter must be assumed not to have been excepted from the incontestable period.

*State, ex rel. v. Smrha,* 138 Neb. 484, 293 N.W. 372. In this case the court rejects the Conway case, supra, and relies upon the Bernier case, supra. We are not sure that the facts in this case are on all fours with the instant case and note that the author of the opinion in *Wilmington Trust Co. v. Mutual Life Ins. Co. of New York,* 3 Cir. 177 F. (2d) 404, 408, says it is clearly distinguishable. We do not go into the matter further for the reason that, shortly after the Smrha case had been announced, the Nebraska legislature passed a statute in effect overruling that case and subsequently adopting the majority rule in the interpretation of the incontestable clause. In the interpretation of a statute, the opinion of the court of another state construing a similar enactment, but which is afterwards rejected and set aside by the legislature of that state, will not be accepted. *Denver & Rio Grande R. R. Co. v. Vitello,* 21 Colo. App. 51, 121 Pac. 112.

*McCann v. National Life & Accident Ins. Co.* (Texas Civ. App.) 226 S.W. (2d) 177, 181. Although plaintiff relies on this case in support of her position, we believe the true import of the decision can be had from the following quoted conclusion of the court: "We therefore hold that the clause in the policy limiting the liability of the appellee to the amount of legal reserve under the policy is a valid and binding provision, that it is not in conflict with the incontestable provision in the policy, that no ambiguity exists by reason of the two provisions, that this is not a contest under the incontestable clause of the policy or of the statute, and that the trial court did

not err in rendering judgment for the amount of the legal reserve stipulated by the parties."

*Philadelphia Life Ins. Co. v. Burgess,* D.C., 18 F. (2d) 599, a suicide case, and possibly favorable to plaintiff's position, was very shortly thereafter overruled by the same court in *Wright v. Philadelphia Life Ins. Co.,* D.C., 25 F. (2d) 514.

■ 2. We are of the opinion that the aviation rider contained in the policy is not limited to civilian aviation. There is no specific provision that it is so limited, and the fact that there is no reference to military or naval aviation does not, in our judgment, mean that that is not excluded in the forbidden character of aviation flight when the aviation rider excepts death as a result of operating or riding in any kind of aircraft, whether as a passenger or otherwise, except as a fare-paying passenger on regularly scheduled routes, etc. Nor does the fact that the policy did not have a war-risk clause give support to any implication that military flights were not excluded. The courts in the following cases have directly considered whether the lack of a war-risk clause renders the aviation clause in an insurance policy ambiguous and all have ruled that it does not: *Wilmington Trust Co. v. Mutual Life Ins. Co. of New York* (C.C.A. [3d], 1949), 177 F. (2d) 404, cert. den. 339 U.S. 931, 70 S. Ct. 665, 94 L. Ed. 1351; *Green v. Mutual Benefit Life Ins. Co.* (C.C.A. [1st], 1944), 144 F. (2d) 55; *Hyfer v. Metropolitan Life Ins. Co.* 318 Mass. 175, 61 N.E. (2d) 3; *Thoma v. New York Life Ins. Co.* (C. P. Northampton Co., Pa., 1946), 11 L. C. (C.C.H.) 993; *Knouse v. Equitable Life Ins. Co. of Iowa,* 163 Kan. 213, 181 P. (2d) 310; *McKanna v. Continental Assurance Co.,* 165 Kan. 289, 194 P. (2d) 515; *Durland v. New York Life Ins. Co.,* 186 Misc. 580, 61 N.Y.S. (2d) 700; and *Burns v. Mutual Benefit Life Ins. Co. of Newark,* D.C., 79 F. Supp. 847, affirmed without opinion, 6 Cir., 179 F. (2d) 236. It seems more logical to assume that the company had the purpose of solely limiting its

aviation risk, whether military or civilian, and was assuming all other risks, whether military or civilian, not in the aeronautic field.

Plaintiff urges strongly the applicability of *Paradies v. Travelers Ins. Co.*, 183 Misc. 887, 52 N.Y.S. (2d) 290. In that case, where the court found an ambiguity, (1) The point which the court there held to be an ambiguity does not exist in the case at bar. (2) The alleged inconsistency between the aviation limitation and the reference to military service was contained in the rider, as well as in the paragraph of the policy, and the principle that where there is an inconsistency between the printed form and a stamped rider the latter must prevail was not available to the insurer in that case. (3) The case of *Durland v. New York Life Ins. Co., supra,* decided two years after the Paradies case by a higher New York court, appears to overrule the Paradies case.

*Conaway v. The Life Ins. Co. of Virginia,* 148 Ohio 598, 76 N.E. (2d) 284, 286, upon which plaintiff relies, is clearly distinguishable from the present case. In that case, as the Ohio court pointed out, the company did not employ the broad general language, "on account of aviation hazard," but used the language "on account of the aviation hazard of the insured." Moreover, the court found an ambiguity in that the company drafted the policy so as to include specifically a war-risk clause in one feature of the policy and to omit war-risk in this particular feature. The ambiguity which was resolved against the company does not appear in this case. We have read the case of *Prudential Ins. Co. v. Fuqua's Administrator,* 314 Ky. 166, 234 S.W. (2d) 666, 22 A.L.R. (2d) 803, and also the recent ensuing annotation at page 809 of 22 A.L.R. (2d), and do not believe either are pertinent or applicable to the facts in this case. It is to be noted that Kentucky has no incontestability statute, and the facts would appear to be distinguishable in the way the Conaway case, supra, is distinguished.

We believe that our interpretation of this aviation rider is consistent with our ruling in *New York Life Ins. Co. v. West, supra,* where we said: "The fact that one who dies by poison took it with suicidal intent while insane does not bring him within the terms of a policy which does not insure against death by poison."

We already have referred to the fact that the aviation questionnaire, upon which plaintiff lays much stress, was not made a part of the policy and is not before us for construction.

We do not agree with plaintiff's interpretation of the phrase "other prohibited risks," but agree with insurer that such an interpretation wholly ignores the word "other." By the distinction made by Williston between incontestable clauses and limitations on coverages, the term "other prohibited risks" becomes harmonious with the clause in which it is included.

Finally, it is to be noted that the Colorado incontestable clause is one that is inserted by statutory compulsion and comes under the rule which we applied in *New York Life Ins. Co. v. West, supra,* as follows: "But the statute is a limitation on the general right of contract and such statutes are strictly construed. In case of doubt they are resolved in favor of the right. *Tinker v. Modern Brotherhood of America,* D.C., 13 Fed. (2d) 130, 132."

The judgment is accordingly reversed.

MR. JUSTICE STONE does not participate.