## Onze et ux. v. The Prudential Insurance Company of America

24

*James E. O'Brien*, for plaintiffs.
*Welles & Mackie*, for defendant.

ROBINSON, J., April 2, 1954.—Plaintiffs in this action in assumpsit declared, as beneficiaries, on a policy of life insurance issued by defendant company on the life of their son, Edward J. Onze. The complaint alleges that the insured died September 18, 1950, while the policy was in full force and effect; that proper proof of death was furnished defendant; and that defendant refused payment and tendered the amount of premiums paid with interest. Defendant answered that the insured was killed in Korea by enemy gunfire while flying a military aircraft as a captain in the United States Air Force and that the insurer is not liable under the provisions of the "Aviation Exclusion Clause Rider" attached to the policy. Plaintiffs replied that the aviation exclusion clause is ineffective because the insured did not sign the attached authorization to include the clause and that the clause itself does not apply to death by enemy gunfire.

The record is made up of pleading admissions, stipulations of fact and agreements in respect to the admission of documentary and testimonial evidence. The parties agreed to trial of the issue without a jury under the Act of April 22, 1874, P. L. 109, as amended, 12 PS §688 et seq. From the evidence we make the following findings of fact:

1. Under date of April 5, 1941, defendant insurance company, a New Jersey corporation, issued a contract of insurance, policy no. 11406010, on the life of Edward J. Onze in the sum of $5,000.

2. Plaintiffs, parents of the insured, were named beneficiaries in the policy. They reside in the Borough of Olyphant, this county.

3. Prior to the issuance of the policy the insured signed and delivered a writing (form 10164) authorizing an amendment of the application so as to permit the insurer to attach an aviation exclusion clause to the policy. An unsigned copy of the authorization was attached to policy when issued.

4. No war risk exclusion provisions are contained in the policy except as affecting the accidental death benefit clause.

5. The policy contained an incontestability clause making the contract incontestable after two years from the date of issue.

6. Aviation exclusion clause rider no. 17538 was part of the policy as issued and provided:

"It is hereby provided, notwithstanding any other provision in this policy to the contrary, that:

"(A) the liability of the company shall be limited to the amount specified below if the insured dies as a direct or indirect result of operating or riding in any kind of aircraft (except as a passenger on a regularly scheduled passenger flight of a commercial aircraft),

. . .

"In the event of such death as described in A above, the full liability of the company under such policy shall be the amount of premiums paid on this policy, together with compound interest at the rate of 3% per annum."

7. All premiums due to defendant under the terms of the policy were paid and plaintiffs performed all things required by the contract.

8. The insured, Edward J. Onze, died on September 18, 1950, and the policy was then in full force and effect. Due proofs of death were furnished to and accepted by defendant.

9. On the day of his death the insured was a captain in the United States Air Force and was on duty as the pilot of a military fighter plane on a reconnaissance flight over southeastern Korea. While making a straf-

ing pass with rocket and machine gun fire over the town of Namwon the insured was wounded by enemy gunfire, his plane was hit causing the engine to explode and the aircraft went to the ground emitting machine gun and rocket fire.

10. Captain Onze was killed solely by enemy gunfire and his death was not the direct or indirect result of operating or riding in an aircraft.

11. On April 5, 1951, plaintiffs paid and defendant accepted $74.30 as a premium due on the policy.

12. Defendant refused payment of the face amount of the policy and on May 13, 1952, tendered instead $1,057.41 representing the amount of the premiums paid on the policy, with interest.

We will, first, dispose of the preliminary questions raised by plaintiffs' contentions.

(a) The insured, by writing, having consented to the aviation exclusion clause, and having accepted the policy, the beneficiaries are in no position to contest the validity of the clause. The fact that an unsigned copy of insured's consent to the aviation rider was attached to the policy will not destroy its effect. It is properly a part of the policy in suit: Good v. Metropolitan Life Insurance Co., 166 Pa. Superior Ct. 334; Employers' Liability Assurance Corporation, Ltd., v. Lebanon Auto Bus Company, 360 Pa. 42; McDaniel v. California-Western States Life Ins. Co., 181 F. 2d 606.

(b) The incontestability clause in a life policy applies only to defenses which concern the formation of the contract or those arising because of subsequent conditions broken. It is ineffective to prevent the insurer from asserting a defense that the death was without the coverage of the policy: 3 Williston on Contracts (rev. ed.) p. 2280; Metropolitan Life Insurance Co. v. Conaway, 152 N. Y. 449, 169 N. E. 642.

(c) An aviation exclusion risk provision in a contract of life insurance applies to military and naval

as well as civilian aviation: Janco v. John Hancock Mutual Life Insurance Co., 164 Pa. Superior Ct. 128; Mutual Life Insurance Co. of New York v. Daniels, 125 Col. 451, 244 P. 2d 1064 (1952).

(d) The rights and obligations arising under the policy were in no wise affected by the payment and acceptance of a premium subsequent to the insured's death.

We turn now to the pivotal question in the case. The expanded use of aircraft in peace and war has given rise to much litigation relating to the meaning and extent of aviation risk exclusion clauses in life insurance policies. The annotations in 155 A. L. R. 1026 and 17 A. L. R. 2d 1041 emphasize the divergent opinions and differences in authority in almost every important aspect of the subject. See section 4, Summary, Analyses and Comment, 17 A. L. R. 2d, supra.

However, since the life of the insured was imperiled at the time of his death by two hazards, one aviation and the other war, the narrow issue here is whether his death falls within the stated exclusions of the aviation risk or is more properly to be attributed to a risk of war which was not excluded from risks of the policy. The respective contentions of the parties compete on this basis.

It is well settled that words used in a contract are to be interpreted by giving to them their ordinary and usual meaning at the time and place where the contract was made considering all of the surrounding circumstances. Any doubt as to the meaning of the language used in an insurance policy should be resolved in favor of the insured and against the interest of the insurer. But where the language is clear and unambiguous it can be taken to mean only what it clearly says. A doubt as to the meaning of clear language may not be created merely to resolve it in favor of the insured and the law will not make over a contract the parties have entered into. See Urian v.

Scranton Life Insurance Co., 310 Pa. 144; Jorgenson v. Metropolitan Life Insurance Co., 136 N. J. L. 148, 55 A. 2d 2. A contract must be interpreted according to the true intent of the parties although conditions affecting provisions may have changed: Provident Trust Company of Philadelphia, Trustee, v. Equitable Life Assurance Society, 316 Pa. 121.

The exclusion clause, here considered, limits the liability of the insurer "if the insured dies as a direct or indirect result of operating or riding in any kind of aircraft." We are of the opinion that thereby the parties intended that defendant was not to be liable for the face of the insurance contract where death ensued, directly or indirectly, from the ordinary and commonly understood perils and hazards of aircraft flight. In Green v. Mutual Benefit Life Insurance Co., 1st cir., 144 F. (2d) 55, Chief Judge Magruder said of this type of exclusion clause:

"The natural and obvious meaning of the aviation clause in the case at bar is that the insurer declines to assume those extra risks of death ordinarily associated with aerial flight."

An aircraft in flight constantly combats the pull of gravity and other forces of nature and mechanical failure, natural perils and operational errors can lead to death and disaster. It is this well known and commonly understood risk which the parties excluded from the coverage of the policy. We cannot agree that the parties also intended the liability of the company to be limited where the insured's death while operating an aircraft was entirely the result of the deliberate act of a public enemy designed to destroy the aircraft and kill its operator.

Life insurance companies frequently limit the coverage of policies by the use of risk exclusion clauses, familiar examples of which are the war risk and aviation risk exclusions. The law has classified these ex-

clusions as either "status" clauses or "result" clauses. A "status" clause will relieve an insurer from liability merely because the insured at the time of his death occupied the status excepted by the contract. A result clause on the other hand does not relieve the insurer from liability unless the death itself was caused by the risk which the insurer declined to assume. In the one type of provision, the status itself is made the basis for nonliability of the insurance company while in the other type of clause the insurer is not relieved from liability unless the death is the result of the risk excluded by the coverage. See Annotation, 168 A. L. R. 685. The law of Pennsylvania is in accord: Selenack, admr., v. Prudential Insurance Co. of America, 160 Pa. Superior Ct. 242; Wolford v. The Equitable Life Insurance Company of Iowa, 162 Pa. Superior Ct. 259; Janco v. John Hancock Mutual Life Insurance Company, 164 Pa. Superior Ct. 128.

In the Wolford case Judge Arnold (now Mr. Justice Arnold) speaking for the Superior Court, said of the result type of clause:

"Such a limitation clause has generally been construed as being tied into the doctrine of causation, so that unless the accident and death *resulted*, i.e., were caused by, or flowed from, the military service, (the risk there excepted) the insurer was held liable. In other words, in the 'result' clause cases, mere status is usually held not to be determinative of liability, the real question being causation or increased hazard."

Cf. Geist v. Niagara Fire Insurance Co., 173 Pa. Superior Ct. 587, for the requirement of causal connection between damage covered under an automobile collision policy and the recovery sought.

The aviation exclusion risk clause in this suit is of the result type, Janco v. John Hancock Mutual Life Insurance Co., supra and the proper inquiry is whether causal connection existed between the insured's

death and the excluded risk. See annotation in 17 A. L. R. 2d, supra, p. 1070. Not only will more uniform and equitable results be reached by applying the doctrine of causation as the determining test in these cases but also it is in order because the parties, by employment of the result clause, contracted that causal connection exist between the death and the excepted risk. Where the result clause is of the "direct or indirect" type a death even remotely caused by the accepted risk will relieve the insurer of liability. These principles furnish a rational basis for the decisions which establish the rule that when the excluded risk is causally connected with the insured's death it affords a defense to the insurer's liability but where causation is not present it does not.

The inquiry in respect to causation becomes critical in those cases where, as here, the insured at the time of his death was exposed to the perils of a risk other than that excluded from the policy. If death under the result type aviation exclusion clause is caused directly or indirectly by the risks of aerial flight then recovery is denied while on the other hand if death is the result of an independent unexcluded risk recovery is allowed even though at the time the insured was engaged in aerial flight. So where the aviation risk is out of the policy coverage but the war risk is in and the insured meets death as a result of aeronautical hazards while aloft on a military mission recovery is denied. In Green v. Mutual Benefit Life Insurance Co., 144 F. 2d 55, the insured, an aviation pilot in the United States Naval Reserve, was prevented from landing his plane on a carrier ship by a sudden driving snowstorm during which the engine's carburetor iced up forcing the plane down in the water in which the insured drowned. Recovery was denied because death was the result of the excluded aviation risk. In Hyfer v. Metropolitan Life Insurance Co., 318 Mass. 175, 61 N. E. 2d 3, the insured, a private in the United States

Army acting as a radioman, was killed while the Army transport plane in which he was flying crashed into a cloud obscured hilltop. The court held death to be due to the excluded hazards of aviation and no liability was upon the insurer. In Knouse v. Equitable Life Insurance Company of Iowa, 163 Kan. 213, 181 P. 2d 310, the insured, a fire control gunner on an Army bomber returning from a military mission, was killed when he bailed out of the plane as its gasoline supply became exhausted, and recovery on the policy was denied. In Barringer v. Prudential Insurance Company of America, 62 F. Supp. 285, aff. 3 Cir. 153 F. (2d) 224, the insured, a major in the United States Army, was a passenger in an Army plane enroute from Puerto Rico to Trinidad which was not heard from after leaving the field. The court after a finding that insured's death resulted from riding in an airplane denied recovery.

In Conaway v. Life Insurance Company of Virginia 148 Ohio 598, 76 N. E. 2d 284, recovery was allowed under a result clause where the pilot of a United States Navy torpedo bomber met death while returning from a military mission over Manila Bay and was prevented from landing on the mother carrier ship when the gasoline supply became exhausted and his plane plunged into the sea. This case is out of line with the underlying rationale of the decisions. The death was clearly a result of aviation perils excluded by the policy.

On the other hand where the aviation risk, but not the war risk, has been excluded from the policy coverage by a result type clause and the insured while engaged in a military aviation mission meets death as a result of enemy gunfire or other action, the insurer is held liable for the face amount of the policy. This conclusion is dictated by both reason and justice for where it is clear that the independent factor of enemy action and not the hazards of aviation was the real

cause of death, the insurer should not be permitted to avoid liability by means of the aviation exclusion clause. In Bull v. Sun Life Assurance Company of Canada, 7th cir., 141 F. 2d 456, the insured, a naval lieutenant, was a member of the crew of a military plane from which the port motor had been shot by Japanese fire forcing the plane to land on the sea. The insured while attempting to launch a rubber boat from the plane was strafed with machine gunfire by enemy aircraft. Recovery on the policy was allowed on the ground that the death was caused by a war risk and was not the indirect result of aviation. In Temmey et al. v. Phoenix Mutual Life Insurance Company, 72 S. D. 387, 34 N. W. 2d 833, the insured was killed when a military plane in which he was a radioman and machine gunner crashed on a reef in the Pacific Ocean. On a finding that the death was caused by enemy gunfire recovery was allowed because the crash did not result from any of the risks ordinarily associated with aeronautics. In Boye v. United Services Life Ins. Co., 168 F. 2d 570, the insured was a member of the crew of a bombing plane engaged in a bombing mission to Peenemude, Germany. His plane failed to return. The court on a finding that death was caused by enemy gunfire and "not due to operating or riding in any kind of aircraft" permitted recovery on the policy. In Riche v. Metropolitan Life Insurance Co., 84 N. Y. S. 2d 832, the insured was killed when struck by enemy fire from anti-aircraft weapons, or a pursuit plane, while aloft as a member of the crew of a United States Army bomber plane on a bombardment mission over Austria. The court allowed recovery holding that death was the result of the deliberate act of a third person and was not connected with any risk ordinarily associated with aerial flight.

Defendant here relies almost entirely upon the decision in Thoma v. New York Life Insurance Company,

30 Northamp. 369. There the insured, an aircraft pilot in the United States Army Air Corps, was struck with anti-aircraft fire while piloting a bomber plane over Germany; he died in the plane which returned with the insured's body to its base in England. The aviation risk was excluded from the policy by a result clause but the war risk was not eliminated from the general coverage. The court denied recovery for the face of the policy upon the reasoning:

"The insured in line of duty operated the army bomber into an unsafe place for a plane and its occupants with his death resulting therefrom. The insured's tragic death resulted from a risk which was one of the foreseeable results of such a flight. Death would not have occurred when it did if he had not taken the flight in the airplane, and liability for death resulting from such a flight was exactly what was excepted from the coverage of the policy.

"Death was suffered in the course of an actual aerial flight due to a cause not entirely or wholly unconnected with the flight as suggested by plaintiff, but due to a cause provoked by this flight. Under the stipulation of the parties, this bomber plane was subjected to anti-aircraft defense and a fragmented shell or bullet struck the insured, mortally wounding him. There is therefore a causal relation between the flight and the death. Death is attributable to and came as a result of the activities of insured as a pilot of a bomber aircraft flying on a bombing mission over enemy territory which subjected insured and his plane to anti-aircraft defenses and anti-aircraft fire so there was a combination of forces and causes and related incidents which culminated in insured's death."

Judge Gilbert, writing in Riche v. Metropolitan Life Insurance Company, supra, said: "The discussion in the Thoma case is carefully developed, but the reasoning does not, in the final analysis, commend itself to

this court", an evaluation with which we are in accord. More applicable to the facts in the Thoma case is Judge Magruder's observation in Green v. Mutual Benefit Life Insurance Company, supra, page 58:

"It may reasonably be said that death by the deliberate act of a third person is not one of the risks ordinarily associated with aerial flight. Travel in a plane brought the insured to the place where he met his death by enemy action, but he might just as well have been brought to that place by boat or otherwise."

The fact that the insured, in the Thoma case, was killed by a shell fragment of enemy gunfire and that his plane returned safely to its base bearing his dead body leads us to disagree with the court's conclusion that the insured's death was the result of the excluded aviation risk; on the contrary, we think it clear that his death can only be considered the result of the risks and hazards of war which were not excluded from the coverage. The excerpt from the opinion in the case discloses that (1) the court incorrectly gave "status" effect to the aviation exclusion clause, obviously a result clause, and (2) read into the aviation clause risk factors that are properly considered as perils and hazards of war.

Of course, where both aviation and war risks are excluded from the provisions of the policy and the insured meets death by enemy action while aloft on a military flight no recovery can be had on the contract: McKanna v. Continental Assurance Company, 165 Kan. 289, 194 P. 2d 515.

In accordance with the legal principles considered in the foregoing discussion, we are of the opinion that the following conclusions of law are required to be entered in this case:

1. The insurance policy in suit was in full force and effect on September 18, 1950 when Edward J. Onze, the insured, met his death.

2. The aviation exclusion clause is a part of the said policy and likewise was in full force and effect on the date of the insured's death.

3. The incontestability clause does not preclude the insurer from asserting defenses arising under the aviation exclusion clause.

4. The risk excluded by the aviation clause includes military as well as civilian flights.

5. Payment of a premium due under the policy by plaintiffs and acceptance of the same by defendant after the death of the insured did not affect the rights and obligations of the parties.

6. The parties intended, by the aviation exclusion clause, that the insurer was not to be liable for the face amount of the policy where death was the direct or indirect result of ordinary risks and perils commonly associated with aerial flight except the risks retained in the clause.

7. The parties did not intend the aviation risk to include the deliberate act of a public enemy designed to kill the insured while in flight and destroy his plane.

8. The aviation exclusion clause in this case is properly classified as a result clause.

9. The insured met his death as a result of enemy gunfire and his death was not the direct or indirect result of the aviation risk excluded by the rider.

10. The risks associated with the war are not excluded by the policy and were assumed by the insurer.

11. Plaintiffs performed all things required of them to be performed under the policy.

12. Defendant is liable to plaintiffs, as the beneficiaries in the policy, for the face amount thereof in the sum of $5,000 with interest from May 13, 1952.

### Order.

Now, April 2, 1954, notice of this decision shall be forthwith given by the prothonotary to the parties, or their attorneys, and unless exceptions are filed within

30 days thereof the prothonotary is directed to enter judgment in favor of plaintiffs and against defendant in the sum of $5,000, with interest from May 13, 1952.

## OPINION SUR EXCEPTIONS

ROBINSON, J., June 4, 1954.—This case is before us on defendant's exceptions to the findings of fact, conclusions of law and disposition entered by the hearing judge in the above case after trial without a jury under the Act of April 22, 1874, P. L. 109, 12 PS §688.

The suit was in assumpsit upon an insurance policy issued by defendant insurance company on the life of Edward J. Onze, a captain in the United States Air Force, who was killed in Korea by enemy action while flying a military aircraft in the line of duty. Defendant contended that it was not liable under the provisions of the "Aviation Exclusion Clause Rider" attached to the policy. The trial judge held the clause in question to be a result type clause, as distinguished from a status clause, and that plaintiffs, as beneficiaries, were entitled to recover because the insured's death was the result of the unexcluded war risk and not the aviation risk which was excepted from the policy coverage.

The record presented no conflict of proof to be resolved and the only finding of fact excepted to is fully justified as a fair, legitimate and required inference. The findings are amply supported by the evidence. The trial judge after an exhaustive review of the authorities and a thorough discussion of the subject, correctly stated and applied the law to the facts of the case. There is nothing we can add to his decision. The matter was properly disposed of.

Accordingly, June 4, 1954, the exceptions heretofore filed by defendant are dismissed and the prothonotary is directed to enter judgment in favor of plaintiffs and against defendant in the sum of $5,000, with interest from May 13, 1952.