Judith R. DAMAN, Appellant,

v.

**NEW YORK LIFE INSURANCE COM-PANY, a corporation, Appellee.**

No. 76–1003.

United States Court of Appeals,
Eighth Circuit.

Submitted May 14, 1976.

Decided July 29, 1976.

Robert E. O'Connor, Jr., Omaha, Neb., for appellant; Robert E. O'Connor and Charles A. Nye and J. Patrick Green, Omaha, Neb., on brief.

John R. Barton, Crossman, Barton & Norris, Omaha, Neb., for appellee.

Before BRIGHT and WEBSTER, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

The action before us concerns three policies of life insurance. The insured was killed in an airplane crash. The defendant has paid the face amount of the policies, but denies liability for payments of double indemnity thereunder, relying on a clause in the policies providing that "the Accidental Death Benefit will not be payable if death * * * results from * * * (c) travel or flight in any kind of aircraft * * * while the Insured * * * is a pilot of such aircraft * * *.[1] The District Court[2] held that double indemnity was not payable to plaintiff under the circumstances involved and the terms of the insurance contracts. We agree.

We confront at the outset a question of fact. The insured, Michael Daman, was a licensed commercial, multi-engine, instrument rated pilot. He had, at the time of his last physical examination in 1971, 1100 hours of flying time to his credit. For the purpose of big game hunting in Alaska, Daman and a friend, David Ewing, contracted for transportation to and from Anchorage by aircraft. The plane, a Piper PA–12, was owned by Mr. Roger Bray, also killed in the accident, who was himself a licensed commercial pilot with a seaplane rating. The first issue before us relates to the identity of the pilot at the time of the crash, Daman or Bray.

The case was tried upon stipulations, depositions, and exhibits. When the plane crashed its fuel tanks ruptured and the ensuing fire consumed everything flammable, as well as burning the bodies in the plane beyond recognition. The identity of the pilot had thus to be determined by examination of the wreckage and the position of the bodies, together with a consideration of all other relevant circumstances.

After discovery of the wreckage, Mr. Franklin Malone, an investigator for the National Transportation Safety Board, flew to and examined the wreckage. It was his testimony, by deposition, that three bodies were found in the wreckage. One of them was forward of the metal remains of the pilot's seat. This body was partially leaning out of the aircraft but the bottom part and the legs were in what had been the pilot's seat.[3] When this body was picked up from its face-down position a watch and ring on one arm, attached to the body, and the only part of the body not burned, were discovered. This body was placed in a body bag marked "pilot," or "pilot's position." No rings or watches were discovered on the other bodies. In Mr. Malone's examination of the wreckage, he ascertained that although the plane was equipped for dual controls, there was no control stick in the back seat, nor was there the burned residue of a control stick in the socket therefor. The ring and watch found on the first body removed were subsequently identified as belonging to Mr. Daman.

The court considered, also, the deposition of Mr. Ronald R. Smith, who flew the helicopter which brought Mr. Malone to the scene of the crash. Portions of Mr. Smith's deposition may be read at variance with investigator Malone's, but we do not regard the differences, if, indeed, they may properly be so termed, as substantial.

Plaintiff urges that since Bray was the owner of the plane and, as we have noted, was himself a qualified sea pilot, there is a strong inference, if not a presumption, particularly since the plane had dual controls,

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, Southern Division, sitting by designation.

1. This provision is quoted at greater length *infra.*

2. The Honorable Robert V. Denney, United States District Court for the District of Nebraska.

3. The other two bodies were behind the pilot's seat.

that he was the "pilot" or "pilot in command" at the time of the accident and thus "the pilot responsible for the operation and safety of the aircraft during flight time." [4] The cases cited to us by plaintiff involving dual-controlled airplanes, however, have no relevance in situations where, as here, it is reasonable to conclude that the back-seat controls were not in place and operable. The third passenger, David Ewing, a very large man whose weight was estimated by investigator Malone to be 325 pounds, was seated in the back seat with the other passenger. It was the testimony of Mr. Malone that in order to fly the PA–12 from the back seat one had to sit in the center of that seat.

Although, under the circumstances, the proofs do not permit a conclusion with absolute certainty as to the identity of the pilot, nevertheless the physical facts go beyond mere speculation and established, in the judgment of the trial court that Daman was in fact the pilot of the plane. We perceive no clear error in such finding.[5]

■ The policies before us contained the following clause concerning accidental death benefits:

ACCIDENTAL DEATH BENEFIT * *

Subject to the terms and conditions of the policy and these Accidental Death Benefit provisions, the Company will pay the Accidental Death Benefit, as part of the policy's death benefit proceeds, upon receipt of due proof that the Insured's death resulted directly, and independently of all other causes, from accidental bodily injury and that such death occurred within 120 days after such injury * * *:

* * * * * *

However, the Accidental Death Benefit will not be payable if death * * *

results from * * * (c) travel or flight in any kind of aircraft (including falling or otherwise descending from or with such aircraft in flight) while the Insured is participating in aviation training in such aircraft, or is a pilot, officer or other member of the crew of such aircraft or has any duties aboard the aircraft while it is in flight if such duties relate in any way to the aircraft, its operation or equipment, or to any purpose of the flight; * * *.

The policies also contained an incontestability provision in the following terms:

# 18. Incontestability.

This policy shall be incontestable except for non-payment of premium, after it has been in force during the lifetime of the Insured for one year from its date of issue.

Plaintiff contends that the controlling Nebraska statute precludes the defendant from relying upon the aeronautic risk exclusion. This statute provides in relevant part:

*Life or endowment policies; provisions required.* No policy of life or endowment insurance, except policies of industrial insurance, shall be issued or delivered in this state unless it contains in substance the following provisions:

* * * * * *

(5) A provision that the policy shall be incontestable after it shall have been in force during the lifetime of the insured for two years from its date, except for nonpayment of premiums and except with respect to limitations of liability which may be contained in the policy relating to (a) death resulting from war or acts of war, declared or undeclared, where such limitations shall have been found by the Director of Insurance to be in keeping with the interests of the poli-

---

**4.** Federal Aviation Administration Regulations § 1.1, 14 C.F.R. § 1.1.

**5.** Fed.R.Civ.P. 52(a) provides in relevant part:
In all actions tried upon the facts without a jury * * *, the court shall find the facts

specially * * *. * * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

cyholders of the company and to be not unfairly discriminatory, and (b) aeronautics other than as a fare-paying passenger of a commercial airline, and flying on a regularly scheduled route between definitely established airports; and in any such cases the liability of the company may be limited by the terms of the policy to a sum not less than the reserve on the face of the policy and the reserve on any paid-up additions thereto and any dividends standing to the credit of the policy, less any indebtedness to the company on the policy; and, at the option of the company, provisions relative to benefits in the event of total and permanent disability, and provisions which grant additional insurance specifically against death ·by accident may be excepted from the incontestable clause; *Provided,* limitations, with reference to aeronautics shall ,not be included in any policy where an extra premium is charged to cover the aeronautic risk, nor shall any such limitations extending beyond the contestable period be included in or attached to any policy where the applicant for insurance has not elected in writing to accept a policy with such limitations, and by such election has agreed to a reduced coverage for the aviation risk.

Neb.Rev.Stat. § 44–502 (Reissue 1974).

It is the plaintiff's position that under the above statute, "[i]n the absence of action by the insured to elect reduced coverage, an aviation risk exclusion comes within the incontestability clause."[6]

The interpretation thus advanced by plaintiff cannot obtain in the light of the circumstances attending the passage of the statute and the provisions thereof. In *State ex rel. Republic National Life Insurance Co. v. Smrha,* 138 Neb. 484, 293 N.W. 372 (1940), Republic had sought to mandamus the State Director of Insurance, Mr. Smrha, to compel his approval of a rider to its life insurance forms, for the purpose of restricting its liability in the event of the death of the insured as a result of engaging in aviation. The Court denied the writ sought, stating that "[t]he insurer [by the rider] absolves itself of any liability in case of death from aviation, and does not even bind itself to pay back the premiums collected." 138 Neb. at 489, 293 N.W. at 374. In the following year, 1941, Legislative Bill No. 126 was introduced. It is now Neb.Rev. Stat. § 44–502(5) (Reissue 1974), providing, *inter alia,* that "in any such [aviation] cases the liability of the company may be limited by the terms of the policy to a sum *not less than* the paid-up additions thereto and any dividends standing to the credit of the policy, less any indebtedness to the company on the policy * * *." (Emphasis added.) Thus the statute answered in significant part the objections expressed by the *Smrha* court.[7]

In addition the statute re-enacted the ·provisions of the earlier statute[8] providing that "at the option of the company, provisions * * * which grant additional insurance specifically against death by accident may also be excepted [from the incontestability requirement]." Finally, the stat-

6. The election here referred to is an election "in writing to accept a policy with such limitations," such election manifesting an agreement by the insured "to a reduced coverage for the aviation risk." The defendant, on ·the other ,hand, argues that such election does ,not pertain or relate to the exclusion from ,accidental death benefits of travel or flight in aircraft quoted *supra.*

7. A portion of the legislative history of the act is cited to us as follows:

Senator Peterson, introducer, explained the Bill and stated that this legislation involved special responsibility in that the old law written many years ago ignored and was not concerned with the problem of aviation since

it did not exist. He brought out that in these times war was either declared or undeclared, and therefore the law has been changed in this bill to cover the aerial problem.

\* \* \* \* \* \*

Mr. John Laflin stated that agents over the state are very much in favor of this aviation clause for the reason they are unable to sell insurance now because policies do not carry this clause. Iowa has the aviation clause; therefore, people in Omaha buy insurance in that state. Right now he said boys in the air service can't buy insurance whereas if this Bill is passed they can secure it.

8. Neb.Comp.Stat. § 44–602 (1929).

ute added a proviso requiring a written election to accept reduced coverage for an aviation risk. In view of the re-enactment of the statutory provision permitting insurance companies to exclude accidental death benefits from the incontestability requirement, we must construe the written election provision as only applying to the face value of the policy, and not to the accidental death benefits. But the policies before us provided full coverage, up to the face amount, for aviation risk. The face of the policies has in fact been paid. It is only the payment of double indemnity which is in dispute. Thus the written election requirement is not applicable in the instant case.

■ As a matter of interpretation, the plaintiff urges to us that where there is an ambiguity in an insurance contract the terms of the policy are to be construed strictly against the insurer and liberally in favor of the insured, citing 29 Am.Jur. Insurance § 258 (1960). The doctrine so expressed has no application to the policies before us. We find no ambiguity in the contracts. Such ambiguity as may exist, if any, arises from the statute itself which involves a limitation on the general right of contract. In such case the generally accepted view was well expressed by the Nebraska court in *Stone v. Physicians Casualty Association,* 130 Neb. 769, 770, 266 N.W. 605, 606 (1936):

9. Such is not the majority rule. *See* 3 S. Williston, A Treatise on the Law of Contracts § 811, at 2280–81 (Rev.Ed. 1936):

In determining whether the incontestable clause is applicable to a given situation a distinction should be noted between the matters of defense going to the invalidity of the whole policy on the one hand, and on the other hand, provisions relating to excepted risks. The incontestable clause is intended not to enlarge the scope of the insurer's promise so as to include liability for death due to causes which are excluded either by expressed terms of the policy or by implication of law, but to make certain the enforceability of the promise as set out in the policy. Properly interpreted, therefore, the incontestable clause does not exclude a defense based on a suicide clause. Such a defense does not contest the validity of the policy, as does a defense of fraud in procuring the policy; it

It must be conceded that an accident insurance company may limit its liability in any reasonable manner, and it may therefore, provide that no liability will arise from death resulting from accidental suffocation * * *.

■ In addition the plaintiff argues that by enacting the 1941 statute, Nebraska adopted "a specific statutory solution to the problem of aviation risk exclusions" namely, that such exclusions are within the incontestability statute,[9] but that the carrier may remove its policy therefrom where the insured has "elected in writing to accept a policy with such limitations."

The argument is ingenious but not persuasive. The exclusion of aviation cases from double indemnity has had, as we have noted, statutory sanction in Nebraska since 1929 and the act before us merely perpetuates it without change. The "writing" requirement had its origin and has its application as above described and does not touch upon the exceptions from the double indemnity provisions of the statute and these policies.

No case is cited to us on the Nebraska court's interpretation of the statute on the issues before us, nor does our independent research disclose such. We agree with the District Court that Michael Daman was the pilot of the plane and that the exclusion clause contained in the Accidental Death Benefits provision in defendant's policies

supports the policy, but asserts that by its terms the insurer is not bound to pay where death is caused by suicide. The contrary decisions which regard the two provisions as conflicting, and which, on the principle of interpreting against the insurer, hold that the incontestable clause prevails over the other, fail to observe this distinction. *The same reasoning is applicable to a provision excluding from the risk assumed by the insurer, death caused by engaging in aviation* or in a forbidden occupation, or due to the insured's engaging in crime. (Emphasis added.) (Footnotes omitted.)
*See also Mutual Life Insurance Co. v. Daniels,* 125 Colo. 451, 244 P.2d 1064 (1952), expressing the thought that the *Smrha* case had been in effect overruled by subsequent legislation; *Metropolitan Life Insurance Co. v. Conway,* 252 N.Y. 449, 169 N.E. 642 (1930) (Cardozo, C. J.); Annot., 17 A.L.R.2d 1041, 1050–52.

was not voided by Neb.Rev.Stat. § 44–502(5) (Reissue 1974).[10]

Under the view we have taken of the case we do not reach additional issues urged by the plaintiff.

Affirmed.

---

10. " * * * [T]his court will give 'great weight' to the interpretations of state law reached by a trial judge who is familiar with local law." *Sherrill v. Royal Industries, Inc.,* 526 F.2d 507, 510 (8th Cir. 1975).